L. J. VONTZ CONSTRUCTION COMPANY, A NEBRASKA CORPORATION, APPELLEE, v. ALLIANCE INDUSTRIES, INC., A CORPORATION, AND ALLIANCE ELECTRIC COMPANY, DOING BUSINESS AS DAVIS ENGINEERING, A CORPORATION, APPELLANTS.

338 N.W.2d 60

Filed September 2, 1983. No. 82-406.

John A. Rickerson of Rickerson & Welch, for appellants.

Dennis E. Martin and Edward F. Pohren of Dwyer, O'Leary & Martin, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

McCOWN, J.

This is an action to recover damages allegedly sustained by the plaintiff as a result of the breach of express and implied warranties in connection with the purchase and sale of an asphalt mix plant manufactured and distributed by the two defendants. A jury returned a verdict of $755,000 in favor of the plaintiff and the defendants have appealed.

On February 5, 1976, the plaintiff, L. J. Vontz Construction Company, placed an order with T. S. McShane Co., Inc. (McShane), for an asphalt mix plant. McShane, in turn, placed the order with Asphalt Equipment Company, Inc. (Asphalt), which was a distributor of asphalt plants. Asphalt, in turn, placed an order for the basic asphalt mix plant with the defendant Alliance Industries, Inc. (Industries), except certain auxiliary equipment which Asphalt was to furnish. Industries was the distributor of asphalt plants for the defendant Alliance Electric Company (Electric), which was the manufacturer of the plant components.

The total price of the asphalt plant from McShane to the plaintiff was $220,375, $37,400 of which was for a generator and lime storage bin not provided by the Alliance defendants.

The plant was scheduled for delivery in the spring of 1976 but did not arrive at the plaintiff's yard until July 1976. There were difficulties in erecting the plant at the site of an old plant owned by plaintiff and the erection was not completed until August 26, 1976.

The plaintiff was not satisfied with the plant's operation and on December 26, 1976, gave notice to McShane, Asphalt, and Industries that the plant was unsatisfactory and that plaintiff intended to seek damages.

The plaintiff thereafter made repairs to the plant and it operated with some success during the 1977 paving season. In 1978 the problems with the plant recurred and plaintiff decided to purchase a new plant, which was purchased in early 1979.

Plaintiff filed suits against McShane, Asphalt, and the Alliance defendants, the initial petition having been filed in March 1977.

In May 1979 the plaintiff executed a "Covenant Not To Execute" with McShane and Asphalt. The agreement provided that in consideration of a payment of $5,000 from McShane and Asphalt to the plaintiff, the plaintiff would not execute against McShane or Asphalt on any judgment that plaintiff might obtain against them in the actions pending against them and the defendants in this case. The agreement also provided that Asphalt and McShane agreed to pursue vigorously their third-party complaints against the defendants in this case through trial, judgment, and execution and that any net proceeds collected on such claims would be remitted to the plaintiff.

The plaintiff filed its fifth amended petition in this action against the Alliance defendants, Industries and Electric, on April 9, 1982. The petition alleged that the defendants in this case breached express and implied warranties and that the plant was generally defective and unsuitable for its intended use. Plaintiff prayed for actual, incidental, and consequential damages, including the diminished value of the plant, repair costs, liquidated damages, and penalties incurred by the plaintiff because of its inability to complete contracts on time, and for loss of profits.

The defendants' answer denied plaintiff's allega-

tions of negligence or breach of warranties, and alleged that plaintiff misused the asphalt plant and was guilty of negligence and contributory negligence in its use, and that the damages alleged were an improper measure of damages and plaintiff was not entitled to recover any consequential damages.

Trial was had to a jury in April 1982. At the trial T. C. Jones, president of McShane, and A. M. Shurtz, vice president of Asphalt, each of whom had signed the covenant not to execute on behalf of his respective company, were called as witnesses for the plaintiff. The trial court refused to allow the defendants to introduce the covenant not to execute or to examine the witnesses on cross-examination with respect to the agreement. The jury returned a verdict of $755,000 in favor of the plaintiff and the defendants have appealed.

Among numerous assignments of error the defendants contend that the trial court erred in refusing to admit into evidence the covenant not to execute and in refusing to permit the defendants to cross-examine Jones and Shurtz with respect to that agreement.

The defendants argue that the covenant was a "Mary Carter" agreement which gave McShane and Asphalt a direct interest in the action, which affected the credibility of Jones and Shurtz, the corporate officers of McShane and Asphalt, who testified for the plaintiff and against these defendants.

Jones and Shurtz testified at trial as to the type and extent of defects in the asphalt plant, the nature and extent of the express and implied warranties given by the defendants, and as to the agency relationship existing between Industries and Electric. The covenant, signed by Jones and Shurtz, not only provided that Asphalt and McShane would vigorously pursue their third-party complaints against these defendants, but also provided that McShane and Asphalt would remit to the plaintiff the proceeds received to the extent of the amount of the plaintiff's

judgment against them, less the value of McShane's counterclaim and the $5,000 paid as consideration for the covenant not to execute. In the event that McShane and Asphalt did not receive sufficient funds in their third-party claims against the defendants to defray the entire amount of the plaintiff's judgment against them, less McShane's counterclaim and the $5,000, then McShane and Asphalt would remit to the plaintiff the entire amount received on their third-party claims.

In addition to the issues directly testified to by Jones and Shurtz, there were sharply contested issues in the case as to the extent of the damages and the duty to mitigate such damages and the time when the duty to mitigate damages arose.

Matters which affected the credibility of Jones and Shurtz were critical, and the court's refusal to admit the covenant and denial of cross-examination with respect to it were prejudicial. A party has the right to cross-examine the witnesses produced by his adversary touching every relation tending to show their interest or bias. A party has the right to cross-examine a witness with regard to an interest which affects credibility. Failure to permit such inquiry constitutes reversible error if prejudice results to the complaining party. *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983).

Clearly, the covenant not to execute in this case was a "Mary Carter" agreement and it created an interest in the action on the part of McShane and Asphalt and on the part of their corporate officer witnesses who testified as to the defendant's liability and the amount of damages suffered by the plaintiff.

This court has recently held that evidence relating to a "Mary Carter" agreement should be admitted where the agreement bears upon the bias and credibility of witnesses employed by a party to the agreement. *Hegarty v. Campbell Soup Co., supra.* That holding applies a fortiori to the present case where Jones and Shurtz were not only employees of a party

to the agreement but were also corporate officers and the actual signatories of the agreement itself.

The covenant not to execute bore directly upon the bias and credibility of the witnesses as to several critical issues at trial. The trial court erred in refusing to admit the covenant into evidence and in refusing to permit cross-examination of Jones and Shurtz as to the terms of the agreement. The error was clearly prejudicial and requires reversal.

In view of the disposition made, it is unnecessary to consider the defendants' remaining assignments of error.

The judgment of the District Court is reversed and the cause is remanded to the District Court.

REVERSED AND REMANDED.

KRIVOSHA, C.J., concurs in the result.