RUTH CAPPS, APPELLANT, V. MARK MANHART, D.D.S., APPELLEE.

458 N.W.2d 742

Filed August 3, 1990.   No. 88-353.

James L. Rold, of Rold & Peppard, for appellant.

Lyman L. Larsen, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from a jury verdict and subsequent motions for judgment notwithstanding the verdict and new trial.

Plaintiff-appellant, Ruth Capps, brought suit against defendant-appellee, Dr. Mark Manhart, for dental malpractice. Capps' charges of negligence against Dr. Manhart involve three areas of dentistry: periodontal (gum disease), restorative (bridgework), and endodontic (root canal). The first area focuses on Dr. Manhart's use of calcium hydroxide as a part of the treatment provided for Capps' periodontal disease. Second, Capps complains that the bridgework that Dr. Manhart planned for her utilized two disease-weakened molars (an upper right and a lower left) as supports. Third, Capps alleges that Dr. Manhart improperly filled the canal of the upper right molar, and caused a perforation of the tooth, in performing a root canal. Dr. Manhart's negligence, according to Capps, would hasten the demise of these two molars and require more restorative work. After the conclusion of the evidence, the jury returned a verdict for the defendant.

The appellant's assigned errors may be summarized as follows: (1) The trial court erred in allowing and excluding certain testimony of defendant and his expert witness and in overruling appellant's motions for a directed verdict; (2) the trial court allowed the opposing counsel, over objection, to make improper arguments to the jury; and (3) the trial court erred in giving certain instructions.

In reviewing a civil case, this court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, which is entitled to every reasonable inference deducible from the evidence. *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990); *Blanchette v. Keith Cty. Bank & Trust Co.*, 231 Neb. 628, 437 N.W.2d 488 (1989).

Taking the view most favorable to the appellee, the record discloses the following operational facts: Periodontal disease is a common disease that destroys the tooth-supporting structures: the gum tissue, the bone, the root surface, and the periodontal ligament (which is a sling in which the tooth is suspended in the bone). The disease is initiated by bacteria, and it becomes an infection which occurs beneath the gum tissue and dissolves the bone.

Ruth Capps had a history of periodontal problems prior to

seeing Dr. Manhart. In 1979 Capps' general dentist referred her to a periodontist, Dr. McVaney, who treated her periodontal problems until the summer of 1981, when Capps moved to South Dakota. While there, Capps saw a dentist who fitted her with removable appliances on the upper and lower parts of her mouth, which were necessitated by the earlier removal of teeth by Capps' general dentist in Nebraska. Capps last saw the South Dakota dentist on September 15, 1982. She moved back to Omaha in 1983 and had not seen a dentist since the 1982 visit when she first saw Dr. Manhart on October 14, 1985, with a severe toothache in an upper right molar.

Dr. Manhart noted periodontal involvement on the affected tooth and treated the area with calcium hydroxide. Dr. Manhart also discussed with Capps the implications of her situation and her removable partial appliances, and asked her not to wear the partial in the upper right area of her mouth, as it was not helping the matter. After further examination and probing, Dr. Manhart determined that Capps had a moderate periodontal problem throughout her mouth, with severe problems on specific teeth.

Dr. Manhart continued to treat Capps until February 1986. The treatment included calcium hydroxide treatments, bridgework, and root canal work. Capps' last visit to Dr. Manhart's office was on February 3, 1986, at which time a dispute arose as to Capps' bill. Dr. Manhart testified that his work with Capps was not finished, and he expected to see her back in his office after the February 3 visit.

## EXPERT TESTIMONY

We begin our discussion regarding the expert testimony in this case, keeping in mind the following: The rules governing duty and liability of physicians and surgeons in the performance of professional services are also applicable to dentists, *Mangiameli v. Ariano*, 126 Neb. 629, 253 N.W. 871 (1934); the approved test for determining whether a physician was negligent in performance of medical services is whether he followed the generally accepted and recognized standard of care or skill of the community or similar communities in performing those services, *Hanzlik v. Paustian*, 216 Neb. 575,

344 N.W.2d 649 (1984); *Kortus v. Jensen*, 195 Neb. 261, 237 N.W.2d 845 (1976).

Lastly, the admission or exclusion of expert testimony is left largely to the discretion of the trial court, which ruling will be upheld absent an abuse of discretion. *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990). See, also, *Fuglsang v. Blue Cross*, 235 Neb. 552, 456 N.W.2d 281 (1990).

### Competence of Defendant's Expert

Capps argues that the defendant's expert witness and defendant were not competent to testify to the appropriate standard of care. The objections made at trial by Capps' counsel alleged that Dr. Allan Nalbor, who testified on behalf of Dr. Manhart and practices dentistry in Merrillville, Indiana, was not licensed to practice, nor did in fact practice, dentistry in Nebraska and that he failed to show a familiarity with the standards in Omaha and similar communities.

A medical expert from one medical community is competent to testify as an expert witness in a medical negligence case as to the standard of care or skill required in another community if the witness has knowledge of or familiarity with the practice and standard of the locality in question, or of a similar or like community. *Wentling v. Jenny*, 206 Neb. 335, 293 N.W.2d 76 (1980); *Kortus v. Jensen, supra*. Dr. Nalbor did testify that he was familiar with the standard of practice applicable to general dentists in Omaha and similar communities. He attended Creighton University for dental school, has taken continuing education courses around the country, and performs work daily in all of the areas of dentistry to which he testified. He testified that Merrillville is "for all practical purposes" a suburb of Chicago.

In *Wentling v. Jenny, supra*, we cited *Kortus v. Jensen* in saying that evidence that the expert had never practiced in the defendant's community goes to the weight to be accorded the evidence by the trier of fact; it does not keep the expert from testifying to a general standard of skill in the defendant's community if he testifies that he is familiar with that standard. Such is the case with Dr. Nalbor's testimony. Dr. Manhart's testimony generally consisted of a description of his patented

calcium hydroxide treatment and of his course of treatment of Capps. The matters that appellant complains of were issues of credibility for the jury. The opinions of defendant and his expert had a reasonable basis, and they were properly received in evidence at the discretion of the trial court. See, *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988); *Herman v. Lee*, 210 Neb. 563, 316 N.W.2d 56 (1982).

## Cross-Examination

Appellant assigns error to the trial court in excluding certain evidence in her cross-examination of defendant's expert. Appellant's brief discusses three areas where cross-examination was denied: (1) certain practices employed by Dr. Nalbor in his office, (2) the licensing agreement between Drs. Manhart and Nalbor, and (3) reference by defendant and his expert to alleged hearsay material and other material introduced by appellant.

The appellant's counsel asked Dr. Nalbor if he had his patients sign a release before he performed calcium hydroxide therapy. Counsel for the appellee objected because the case did not involve an issue of informed consent and because the issue was not relevant to the alleged negligence in Capps' treatment. Evidence which does not tend to impeach any witness on a material point and which is not substantive proof of any fact relative to the issue is properly excluded. *State v. Williams*, 219 Neb. 587, 365 N.W.2d 414 (1985). Whether Dr. Nalbor's office practice included having patients sign a release has no bearing on whether Dr. Manhart breached the standard of care in his treatment of appellant. The trial court's exclusion of this testimony was not prejudicial to the appellant and was not an abuse of discretion.

Appellant next claims that the trial court erred in refusing to admit into evidence the licensing agreement between Drs. Nalbor and Manhart, which provided the terms for Dr. Nalbor's use of Manhart's patented calcium hydroxide treatment. Dr. Nalbor admitted by oral testimony the existence of the agreement and that he paid Dr. Manhart a royalty for each use of the treatment. With this testimony already in evidence, the court found the agreement to be unnecessary and

cumulative. See Neb. Rev. Stat. § 27-403 (Reissue 1989). We agree.

Lastly, the appellant claims that she was not allowed to cross-examine the defendant and his expert on their reference to alleged hearsay material. The trial court sustained several objections throughout appellant's cross-examination of Drs. Nalbor and Manhart in reference to literature they rely on.

While the right of cross-examination is fundamental, a ruling on evidence of a collateral matter intended to affect the credibility of a witness falls within the discretion of a trial court. *State v. Williams, supra.* The appellant claims that considerable time was spent by counsel for appellee in establishing foundation of Dr. Manhart's status as an expert in his field. The appellant's expert witnesses testified similarly to their status in the dental community. The credibility of each was then a matter for the jury. Further, we note below that while appellant makes claims of hearsay testimony by reliance on outside research and literature, appellant's experts also rely on literature in forming their opinions. Failure to permit cross-examination regarding credibility constitutes reversible error if prejudice results to the complaining party. *L. J. Vontz Constr. Co. v. Alliance Indus.*, 215 Neb. 268, 338 N.W.2d 60 (1983); *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983). Appellant has failed to demonstrate that she was prejudiced by the trial court's rulings; therefore, the rulings are affirmed.

## Hearsay

To appellant's objection to the alleged admission of hearsay, we note that the appellee's references to research and literature were not offered to prove the truth of their contents, but as a basis for Dr. Manhart's testimony of his treatment of the appellant. This is proper in expert testimony, and the basis for the expert's opinion need not be disclosed or admitted into evidence. See, Neb. Rev. Stat. § 27-703 (Reissue 1989); Neb. Rev. Stat. § 27-705 (Reissue 1989).

Expert witnesses quite often rely on sources of research and literature as bases of their opinions, and a reference to those sources during testimony does not reduce that testimony to hearsay. One of appellant's experts even made reference to "the

literature" in describing the effect of calcium hydroxide in dentistry. The literature referred to by the appellee was not offered as independent evidence of its truth, and the trial court's rulings on this matter were not an abuse of discretion.

Having affirmed the trial court's evidentiary rulings, we find that there was ample evidence presented by both parties on the issue of liability, thus creating a jury question. The court properly denied appellant's motions for directed verdict.

## JURY INSTRUCTIONS

The appellant assigns error to the giving of instructions Nos. 11 through 14, particularly instruction No. 13, which reads:

A general dentist is not bound to use any particular method of treatment, and if, among general dentists of ordinary skill and learning, more than one method of treatment is recognized as within the standard of care, it is not negligence for a general dentist to adopt any of such methods. The fact that some other dentist testified in this case that he would have followed a different method than that followed by the defendant, does not, standing alone, establish that Dr. Manhart made or gave improper treatment.

It appears from the record before us that at no time before this appeal did appellant object to the above instructions. The failure of counsel to object to the giving of certain instructions after they have been submitted to counsel for review will preclude raising an objection to the instructions on appeal, unless there is plain error indicative of a probable miscarriage of justice. *Gilbert v. Archbishop Bergan Mercy Hospital*, 228 Neb. 148, 421 N.W.2d 760 (1988); *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987).

## ARGUMENT TO THE JURY

Appellant lastly assigns error to the district court in allowing appellee's counsel to make improper argument to the jury by raising issues of contributory negligence and assumption of risk, which were not pled. We have said that one may not complain of alleged misconduct of adverse counsel if, with knowledge of such alleged misconduct, he does not ask for a

mistrial but consents to take the chances of a favorable verdict. *Johnson v. Nebraska Public Power Dist.*, 187 Neb. 421, 191 N.W.2d 594 (1971).

Appellant admits in her brief that she did not move for a mistrial, and concedes that she does not argue that this issue is sufficient to overturn the jury's verdict. Therefore, we do not consider appellant's argument, and the alleged error is without merit.

The judgment of the trial court is affirmed.

AFFIRMED.