CHARLES F. ROBINSON AND JOSEPHINE A. ROBINSON,
HUSBAND AND WIFE, APPELLANTS, V. BOB J. BLEICHER, M.D.,
ET AL., APPELLEES.

559 N.W.2d 473

Filed February 14, 1997.    No. S-94-558.

Daniel B. Cullan and Pamela J. Dahlquist, of Cullan & Cullan, for appellants.

Michael J. Mooney and Alison L. McGinn, of Gross & Welch, P.C., for appellee Bleicher.

Walter E. Zink II and Allan E. Wallace, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees Kent R. Eakins and Lincoln Ear, Nose & Throat Associates, P.C.

William L. Tannehill and Brett W. Berg, of Knudsen, Berkheimer, Richardson & Endacott, for appellee Bryan Memorial Hospital.

WHITE, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Charles F. Robinson and Josephine A. Robinson appeal a jury verdict in favor of appellees in a medical malpractice action brought in Lancaster County District Court. The Robinsons allege that appellees Bob J. Bleicher, M.D., and Kent R. Eakins, M.D., failed to obtain Charles F. Robinson's informed consent for the surgical procedure accomplished and that appellee Bryan Memorial Hospital negligently failed to preserve and produce Robinson's consent form and certain sleep study information which was the basis for the surgery.

The trial court did not allow the Robinsons' medical expert witness to testify as to the standard of care for doctors, regarding informed consent, and as to standards for record maintenance by hospitals. The court dismissed Bryan Memorial at the close of the Robinsons' evidence. Dr. Bleicher's and Dr. Eakins' motions to dismiss were addressed by the court and granted in such a way that the only issue which was sent to the jury was

the question of whether Robinson gave his informed consent to the surgery done. The jury reached a verdict in favor of Drs. Bleicher and Eakins, and the Robinsons appealed. The Robinsons allege that the court erred in excluding their medical expert's testimony on the standard of care regarding informed consent in Lincoln, Nebraska, and in dismissing Bryan Memorial. We removed the case from the Nebraska Court of Appeals' docket pursuant to our power to regulate the dockets of lower courts. Finding no error in the district court's decision, we affirm.

## BACKGROUND

Robinson sought treatment from Dr. Bleicher on March 23, 1988. After a sleep study, it was determined that Robinson suffered from a severe case of sleep apnea, a condition in which an individual ceases breathing while sleeping, which was life threatening due to the low levels of oxygen in his blood. Dr. Bleicher requested that Dr. Eakins treat Robinson as a consulting doctor.

Two surgical procedures are involved in this case. The first is called a uvulopalatopharyngoplasty (UPP). The testimony defined a UPP as removal of some of the excess tissue in the back of the throat in order to open up the airway and permit air to pass through the mouth during sleeping periods. The second is called a tracheostomy and involves making a hole in the windpipe and putting a tube in the hole, thereby bypassing the obstruction and allowing air to pass freely from the outside directly through the tube and into the lungs.

Frederic Paul Ogren, an ear, nose, and throat doctor in Omaha, Nebraska, who was an expert medical witness testifying for the appellees, stated that the tracheostomy is the standard by which all other treatments are measured because it bypasses the obstructed area in the upper respiratory tract and eliminates the obstruction. It is the only treatment which approaches being a 100-percent successful treatment for sleep apnea.

The testimony differs as to what procedures and alternatives were discussed by the Robinsons and Drs. Bleicher and Eakins.

Robinson claims that the UPP was the only discussed surgery and that no alternatives to that surgery were mentioned. Robinson also testified that after the March 28, 1988, tracheostomy, when he asked Dr. Bleicher, " 'What in the heck is this?' " Dr. Bleicher said, " 'That's what I'd like to know, what it is,' " upon seeing Robinson with a tracheotomy tube in his neck.

Josephine Robinson, Robinson's wife, testified that Dr. Eakins never informed them of the tracheostomy and never discussed alternative forms of treatment with them, although she was not present at all of Robinson's meetings with Drs. Bleicher and Eakins. Josephine Robinson testified that prior to the tracheostomy they had been a very happy couple and enjoyed each other's company, but following the surgery, Robinson became very depressed, withdrawn, and almost completely impotent.

Drs. Bleicher and Eakins claim that they discussed both the UPP and the tracheostomy, which is the more invasive procedure, and that Robinson consented to both procedures.

Bryan Memorial is unable to produce certain documents. First, the sleep study raw data could not be produced. Russell S. Steinkuehler testified that Bryan Memorial lost the sleep study raw data for all patients prior to 1989 during movement and consolidation of records from one storage building to another. Second, Bryan Memorial is unable to produce the consent form for surgery. The testimony adduced at trial demonstrated that the files of a patient headed to surgery pass through several persons' hands. The file documents are contained in a vinyl-covered binder. The consent form, as a loose sheet, is placed inside the cover of the binder. It is not bound into the binder. Occasionally, the consent form of a patient will stick to the vinyl cover of the chart binder. When the patient leaves the hospital, the chart is taken out of the vinyl binder, and the binder is reused. If and when loose consent forms are found, they are immediately sent to the records department to be placed with the appropriate file. Upon notice of the Robinsons' lawsuit, the Robinson file was placed in a locked facility. During the trial, the file was entered into evidence.

A legion of Bryan Memorial employees and former employees testified as to the hospital's standards. They concurred that

a patient goes through many checkpoints prior to surgery to ensure that a consent form is signed. Eunice Wendelin testified that she saw the tracheostomy consent form; she was in charge of Robinson's chart maintenance prior to the time of Robinson's surgery. Darlene Brummer testified that the sheet was signed, because the patient does not go off the preoperative floor unless a consent form is signed by the patient or a family member of the patient. Lorrie Larson testified that she followed a standard education procedure with Robinson about both the tracheostomy and the UPP. Karen Bade stated that surgeries like Robinson's do not proceed unless a patient-signed surgery consent form is on the patient's cart as it is rolled into the surgery room, because those surgeries are not rushed operations. Finally, Linda S. Kolterman testified that she discussed the tracheostomy and the UPP with Robinson and that Robinson agreed to proceed with the surgeries, with the totality of the conversation documented on the chart in evidence.

Rebutting all of these witnesses was Robinson, who testified that he recollects parts of the conversations which were documented on his chart but that he cannot recall those portions of his conversations documented which dealt with the scheduled surgeries.

## ASSIGNMENTS OF ERROR

The Robinsons' assignments of error, in summary, are that the court erred in precluding the Robinsons' medical expert from testifying to the applicable standard of care, in dismissing Bryan Memorial at the close of the Robinsons' evidence, and in precluding testimony regarding the records retention standards set forth by the Joint Commission on the Accreditation of Hospitals (JCAH).

## STANDARD OF REVIEW

When a trial court sustains a motion to dismiss, it resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996); *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). When reviewing a question of law, an appellate court reaches a

conclusion independent of the lower court's ruling. *Allemang v. Kearney Farm Ctr., ante* p. 68, 554 N.W.2d 785 (1996); *Grand Island Latin Club v. Nebraska Liq. Cont. Comm., ante* p. 61, 554 N.W.2d 778 (1996); *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996).

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996); *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995).

## ANALYSIS

We will first address the assignments regarding the dismissal of Bryan Memorial.

### MOTION TO DISMISS

In order to succeed in an action based on negligence, a plaintiff must establish the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Hand v. Starr*, 250 Neb. 377, 550 N.W.2d 646 (1996); *Dolberg v. Paltani*, 250 Neb. 297, 549 N.W.2d 635 (1996); *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995); *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994); *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994).

The Robinsons complain that the trial court erred in refusing to allow Dr. Edwin Breitenbach to testify as to Bryan Memorial's duty to procure and preserve medical records under the standards set forth by the JCAH. We note that no offer of proof was made concerning to what Dr. Breitenbach would have testified.

At the time Dr. Breitenbach testified, the Robinsons failed to show that the rules and regulations of the JCAH existed during the relevant times of Robinson's treatment. Also, at the time Dr. Breitenbach testified, there was no testimony that Bryan Memorial was, for the relevant time period, accredited by the

JCAH and no other evidence that Bryan Memorial was bound by or had adopted such rules and regulations. The Robinsons presented no other evidence. Bryan Memorial filed a motion to dismiss.

In a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can be reasonably drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and the plaintiff has made a prima facie case, the motion to dismiss should be overruled. *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996); *Hill v. City of Lincoln, supra; Knaub v. Knaub, supra.*

Although the JCAH duties which the Robinsons attempted to introduce are paralleled in certain federal regulations made applicable to hospitals which have filed agreements to participate in the health insurance for the aged and disabled programs, the Robinsons did not prove that Bryan Memorial entered into such agreements. The trial court was therefore correct in finding that the Robinsons had failed to prove a duty on the part of Bryan Memorial to maintain records and properly granted Bryan Memorial's motion to dismiss.

## EXPERT TESTIMONY—INFORMED CONSENT

After Bryan Memorial was dismissed, the sole issue became whether Drs. Bleicher and Eakins failed to obtain informed consent for the surgery.

On the issue of informed consent, the Robinsons proffered testimony of one expert who was board certified, but who had no experience in Lincoln, or in Nebraska. Drs. Bleicher and Eakins properly objected. See *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). The trial court refused to allow the expert to testify. In Nebraska, a physician's duty to disclose the risks of a particular procedure or treatment, allowing for informed consent, is established by the "professional" theory. The professional theory " 'holds that the duty is measured by the standard of the reasonable medical practitioner under the same or similar circumstances, and must be determined by expert medical testimony establishing the prevailing standard

and the defendant practitioner's departure therefrom. . . .' " *Eccleston v. Chait*, 241 Neb. 961, 967, 492 N.W.2d 860, 865 (1992) (quoting *Smith v. Weaver*, 225 Neb. 569, 407 N.W.2d 174 (1987)). This is a locality standard and is the correct standard to be applied in this case.

The Robinsons cite *Capps v. Manhart*, 236 Neb. 16, 458 N.W.2d 742 (1990), for the proposition that a medical expert from one community is competent to testify as an expert witness in a medical negligence case as to the standard of care or skill required in another community if the expert has knowledge of or familiarity with the practice and standard of the locality in question or of a similar or like community.

We agree that the proposition of law in *Capps v. Manhart, supra*, is applicable in a straight medical malpractice action; however, this action is based upon a lack of informed consent or inadequate information for Robinson's consent to a surgical procedure. As we expressly stated in *Eccleston v. Chait, supra*, in an informed consent case, a locality standard is applicable. Therefore, the *Capps* rule is not applicable in this case.

In determining whether an expert's testimony is admissible, a court considers four preliminary and interrelated questions: (1) whether the witness qualifies as an expert pursuant to Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995); (2) whether the expert's testimony is relevant; (3) whether the expert's testimony assists the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995). Further, the soundness of a trial court's ruling regarding an expert's qualifications depends upon the particular facts of the case. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996); *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995). Finally, a witness may qualify as an expert by virtue of either formal training or actual practical experience

in the field. *Crawford v. Department of Motor Vehicles*, 246 Neb. 319, 518 N.W.2d 148 (1994); § 27-702.

In determining whether the district court abused its discretion, this court has held that expert testimony should not be received into evidence if it is evident that the witness does not possess such facts that enable him to express a reasonable, accurate conclusion as distinguished from a mere guess; without an adequate basis of facts, the witness should not be allowed to give an opinion. *Menkens v. Finley, ante* p. 84, 555 N.W.2d 47 (1996).

In this case, Dr. Breitenbach clearly had no knowledge with respect to the standard of informed consent in Lincoln on March 24, 1988. The fact that Drs. Bleicher and Eakins may have testified about the standard in Iowa City, Iowa, and other cities vis-a-vis Lincoln does not establish foundation for Dr. Breitenbach to testify about the standard on informed consent in Lincoln on March 24. Because Dr. Breitenbach was not in possession of facts which would enable him to express a reasonable, accurate conclusion, it was not an abuse of discretion for the district court to exclude his testimony.

## CONCLUSION

The motion to dismiss was properly granted. Finding no error at the district court level, the decision of the district court is hereby affirmed.

AFFIRMED.

LANPHIER, J., participating on briefs.

WRIGHT, J., concurring.

I concur in the result. Nebraska's "informed consent" requirement is found in Neb. Rev. Stat. § 44-2816 (Reissue 1993), which provides in part: "Informed consent shall mean consent to a procedure based on information which would ordinarily be provided to the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities."

There are two different theories regarding the extent of a physician's duty to disclose the risks of a particular treatment or procedure—the "professional" theory and the "material risk"

theory. The professional theory holds that the duty is measured by the standard of a reasonable medical practitioner under the same or similar circumstances, and must be determined by expert medical testimony establishing the prevailing standard and the defendant practitioner's departure therefrom. *Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992); *Smith v. Weaver*, 225 Neb. 569, 407 N.W.2d 174 (1987).

This is contrasted with the material risk theory, which holds that the duty to disclose is measured by the patient's need for information to balance the probable risks against the probable benefits in making the decision to either undergo or forgo the treatment proposed. Expert testimony is not required to establish the physician's duty to disclose, and the fact finder can decide, without the aid of a medical expert, whether a reasonable person in the patient's position would have considered the risk significant in making his or her decision. *Id.*

As we pointed out in *Eccleston*, "[t]he material risk theory protects a patient's 'right of physical self-determination [because it] mandates that the scope of a physician's duty to disclose therapeutic risks and alternatives be governed by the patient's informational needs.'" 241 Neb. at 968, 492 N.W.2d at 864.

We are bound to follow the standard established by § 44-2816, but I do not believe the reasons for this law are sound. A physician should be required to inform the patient of the possible risks and alternatives. The duty should not be measured by what other physicians are doing in the same or similar locality. It is the rights of the patient that must be considered first, not the standard of practice in a particular locality.