RONALD DEAN RODGERS, APPELLEE, V. ROGER SPARKS, DOING BUSINESS AS SPARKS CONCRETE, AND THE HARTFORD INSURANCE COMPANY, THIRD-PARTY PLAINTIFF, APPELLANTS; CORNHUSKER CASUALTY COMPANY, THIRD-PARTY DEFENDANT, APPELLEE.

421 N.W.2d 785

Filed April 8, 1988.   No. 87-599.

Francis L. Winner of Winner, Nichols, Douglas, Kelly and Arfmann, for appellants.

Robert G. Pahlke of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, P.C., for appellee Ronald D. Rodgers.

Walter E. Zink II of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Cornhusker Casualty Company.

Boslaugh, Caporale, and Grant, JJ., and Rist and Clark, D. JJ.

Per Curiam.

This is an appeal in a proceeding under the Workers' Compensation Act. The plaintiff, Ronald Dean Rodgers, alleged that he was injured on July 25, 1983, while employed as a laborer by the defendant Roger Sparks, doing business as Sparks Concrete.

According to the plaintiff, he was injured while working at a feedlot, pouring a cement slab and putting up steel pipes. Rodgers testified he was attempting to hold up a steel pipe, which weighed approximately 200 pounds, when he developed a sharp stabbing pain in his chest and back and then collapsed and had trouble breathing. At his own request, he was taken to see Dr. Daryl Wills, a licensed chiropractor, that same day.

Dr. Wills' examination consisted of examining Rodgers' thoracic spine with palpation, motion palpation, and ranges of motion. Rodgers refused to have an x ray taken. Dr. Wills diagnosed the injury as an acute moderate to severe traumatic thoracic juxtaposition with associated myalgia, neuralgia, and deep and superficial muscle spasm. Dr. Wills testified that in layman's terms Rodgers had pulled the muscles in his back, which shifted vertebrae, and developed pain, nerve irritation, and muscle spasms. He further testified that this was a cartilaginous injury in which the heavy lifting depressed the shoulder girdle, which depressed the rib cage. The torquing of the ribs brought a strain on the cartilages. There are lightning joints between the cartilages and the sternum in the rib area, which are held by thin ligament structures both anteriorly and posteriorly. When an injury or trauma is experienced, those ligaments are stretched and/or torn.

Dr. Wills' treatment for this condition included therapy to the muscles, chiropractic manipulations, and pulse ultrasound therapy to the thoracic and external or chest spine. Rodgers was also placed in a rib orthopedic appliance.

After the initial visit on the day of the injury, Dr. Wills treated Rodgers on July 27 and July 29, 1983, for aches, weakness, and pain. Rodgers returned on August 16 and 19 and

October 25, 1983. Rodgers continued to have problems relating to rib irritation and again sought treatment, on November 18, 1983. Rodgers continued to work after the accident until September 29, 1983, doing the same kind of work. He returned to work in April 1984, after the winter layoff, again doing the same type of work.

In June 1984, while still employed by Sparks, Rodgers was injured while pushing a wheelbarrow filled with cement, and which weighed about 300 pounds, through approximately 6 inches of sand. While pushing the wheelbarrow, he experienced a sharp stabbing pain and fell to the ground. In comparing this with the previous injury, Rodgers testified that it felt like the exact same pain. He visited Dr. Wills the next day, June 19, 1984. Dr. Wills diagnosed the injury as acute traumatic costovertebral and costosternal juxtaposition, with associated intercostal myalgia and neuralgia. As compared to the earlier injury, Dr. Wills testified that it involved the same area of the spine and that this diagnosis was consistent with the previous diagnosis.

Rodgers visited Dr. Wills again on June 21, 1984, and on May 13, 1985, he saw Dr. Wills, with complaints that he felt his ribs were out of place. Rodgers continued to visit, with complaints of chest pain, on May 20, June 1, August 5, September 10, and December 18, 1985. On December 18, 1985, x rays were taken for the first time. Dr. Wills testified that the x rays indicated that Rodgers had rotational problems of the vertebrae and a marked subluxation of one of his ribs. He explained that subluxation is an off-centering of the joint fixed within a range of motion so that it cannot move freely.

Dr. Wills again saw Rodgers for chest complaints on January 3, 1986; on February 4, for stiffness of the cervical spine; on February 19, for neck discomfort and chest pain; and on March 12, for cervical spine stiffness, headache, and chest trouble. He returned for similar problems on April 16, May 1, and August 14, 1986.

Rodgers testified that since the accident on July 25, 1983, he has had pain in his chest and rib area whenever he lifts something heavy.

On August 7, 1986, Rodgers filed a petition in the Workers'

Compensation Court, claiming that he was injured on July 25, 1983, while working for Sparks, who was at that time insured by The Hartford Insurance Company.

Hartford answered, denying liability, and alleging that Rodgers' injury took place on June 18, 1984, during a time when Cornhusker Casualty Company was the employer's insurance carrier.

After a hearing before a single judge, the compensation court found that the second injury on June 18, 1984, caused Rodgers' disability, and dismissed the petition as to Sparks and Hartford. The court also dismissed a third-party complaint against Cornhusker Casualty because the statute of limitations barred recovery for the accident of June 18, 1984.

On rehearing before a three-judge panel, the compensation court found that the accident on July 25, 1983, caused Rodgers' disability and that the second accident on June 18, 1984, only exacerbated the original injury. Two judges awarded compensation for temporary total disability, 20 percent loss of earning power, rehabilitation benefits, chiropractic expenses, and an attorney fee. The third member of the panel found that the plaintiff's loss of earning power did not exceed 5 percent and that rehabilitation benefits should be denied because the plaintiff could return to the work for which he had previous training or experience. The third-party complaint against Cornhusker Casualty was again dismissed.

Sparks and Hartford have appealed.

The appellants' principal assignment of error is that the compensation court erred in relying exclusively on the testimony of a chiropractor to establish medical standards beyond the scope of chiropractic.

In workers' compensation cases,

> Unless the character of an injury is objective, that is, an injury's nature and effect are plainly apparent, an injury is a subjective condition, requiring an opinion by an expert to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury.

*Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 785, 408 N.W.2d 280, 289 (1987). See, also, *Hamer v. Henry*, 215 Neb.

805, 341 N.W.2d 322 (1983); *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981).

> [W]here the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries. The employee must show by competent medical testimony the causal connection between the alleged injury, the employment, and the disability.

*Hamer v. Henry, supra* at 809, 341 N.W.2d at 325.

The issue here is whether the testimony of a chiropractor was "competent medical testimony."

Under Neb. Rev. Stat. § 71-177 (Reissue 1986), the practice of chiropractic is defined as being one or a combination of the following, without the use of drugs or surgery:

> (1) The diagnosis and analysis of the living human body for the purpose of detecting ailments, disorders, and disease by the use of diagnostic X-ray of the axial skeleton excluding the skull, physical and clinical examination, and routine procedures including urine analysis; or (2) the science and art of treating human ailments, disorders, and disease by locating and removing any interference with the transmission and expression of nerve energy in the human body by chiropractic adjustment, chiropractic physiotherapy, and the use of exercise, nutrition, dietary guidance, and colonic irrigation.

Although it is clear that a chiropractor is not licensed to engage in the practice of medicine and surgery as defined under Neb. Rev. Stat. § 71-1,104 (Reissue 1986), the practice of chiropractic is a skilled profession. Neb. Rev. Stat. § 71-179 (Reissue 1986) requires:

> Every applicant for a license to practice chiropractic shall (1) present satisfactory evidence that he has completed a four-year course in an accredited high school; (2) present proof of graduation from an accredited college of chiropractic; and (3) pass an examination prescribed by

the Board of Examiners in Chiropractic in the subjects of anatomy, adjusting, bacteriology, chemistry, chiropractic physiotherapy, hygiene, pathology, roentgenology, orthopedics, physiology, symptomatology, palpation, principles and practice of chiropractic; *Provided*, that the Board of Examiners in Chiropractic may waive the written examination for an applicant who holds a National Board of Chiropractic Examiners Certificate who meets the requirements of this section and who satisfactorily passes all oral and practical examinations of the Board of Examiners in Chiropractic.

In *Chalupa v. Industrial Commission*, 109 Ariz. 340, 509 P.2d 610 (1973), the court considered the extent to which a licensed chiropractor could testify as an expert in an Industrial Commission hearing. The court granted review to correct an incorrect statement of law contained in the lower court's decision, which had stated in part that " 'while a chiropractor or naturopath may give testimony as to observable facts within his realm of knowledge and training, any other testimony he might offer which takes the form of medical conclusions (as to causation or disability, for example) cannot be regarded as expert medical testimony.' " 109 Ariz. at 341, 509 P.2d at 611.

The Arizona court noted that while chiropractors, unlike physicians, were not competent to give expert testimony in the entire medical field, they were competent as expert witnesses in their limited field of practice. The court held that, regardless of chiropractors' limitations,

[W]e do not believe that a statute which allows [a chiropractor] to manipulate or treat by hand articulations of the spinal column denies him the right to diagnose the reasons for that treatment. We believe that he is a competent witness to testify as to causation of any abnormalities of the spine.

109 Ariz. at 341-42, 509 P.2d at 611-12.

In *Fries v. Goldsby*, 163 Neb. 424, 435, 80 N.W.2d 171, 178 (1956), we said that "a duly licensed and practicing chiropractor is competent to testify as an expert witness within the scope of his knowledge according to his qualifications in the field of chiropractics, and the weight of his testimony is a question for

the jury." What must now be determined is whether causation and permanency are within the scope of the field of chiropractic.

Other courts appear to hold, generally, that chiropractors are competent to express an opinion as to the cause of an injury, its probable effects, and its permanency.

In *Miss. Farm Bureau Mut. Ins. Co. v. Garrett*, 487 So. 2d 1320 (Miss. 1986), the court held that one who is qualified as an expert in chiropractic may state an opinion regarding diagnosis, causation, and prognosis of an injury when the testimony is carefully limited to the field of chiropractic. "The fact that medical doctors . . . might even be qualified to give better and more reliable opinions is beside the point." 487 So. 2d at 1327. The court stated it is within the discretion of the trial court as to whether a chiropractor's testimony would be helpful.

In *Klingman v. Kruschke*, 115 Wis. 2d 124, 339 N.W.2d 603 (1983), a chiropractor was allowed to give his opinion concerning the cause and permanence of the plaintiff's injuries in light of the fact that proper foundation was laid. The chiropractor based his opinion on his examination of the plaintiff and on statements made by the plaintiff during the examination that the neck stiffness had begun after the accident. The chiropractor diagnosed it as an injury to the cervical spine with associated nerve damage. The court held that the plaintiff's statements regarding neck stiffness provided sufficient foundation for the chiropractor's conclusion that the accident caused the injuries, and noted that it was for the jury to weigh the credibility.

In *Stevens v. Smallman*, 267 Ark. 786, 590 S.W.2d 674 (1979), the court held that a chiropractor could express his opinion as to whether the plaintiff was permanently disabled from an auto collision, where the chiropractor had examined the plaintiff, taken a history of his complaints, and treated him over a period of several months. The chiropractor was permitted to testify that the patient had muscle spasms in the cervical area, misalignment in the vertebral column, limitation of motion in the cervical area, and continuing pain, and that because the muscle spasms and pain had not cleared up during months of treatment, the patient had suffered a 5- to 7-percent permanent disability.

In *Line v. Nourie*, 298 Minn. 269, 215 N.W.2d 52 (1974), the court allowed a chiropractor to testify that the plaintiff had suffered general spinal sprain and strain and that as a result, some of the muscles had lost their ability to hold the vertebrae in place and, further, that the cause of this condition was an automobile accident and that plaintiff had suffered a 15- to 20-percent permanent partial disability of the mid and upper thoracic spine. The court held it permissible for a chiropractor to render opinions based on reasonable chiropractic certainty as to the probable effects, permanency, and future medical requirements, where proper foundation for such opinion has been laid.

Finally, in *Badke v. Barnett*, 35 A.D.2d 347, 316 N.Y.S.2d 177 (1970), the court rejected an argument that chiropractors should not be permitted to give expert medical testimony on questions of diagnosis, prognosis, and causal connection because they lack the extensive training of a physician. The court held that because chiropractors are extensively trained in the practice of chiropractic and are qualified to treat patients suffering from chiropractic ailments, a chiropractor should be deemed competent to testify as an expert witness and express his opinion as to the nature of a chiropractic ailment and its probable cause and duration. Hence, it was proper for the chiropractor to testify that, based on his examination of the plaintiff, she suffered from a subluxation, or a slight overriding of one vertebra against the other. This caused nerve roots in the vertebral openings to be pinched, which in turn caused muscle spasms. The chiropractor testified that it was his opinion that the auto accident was the cause and the injuries were permanent. The court rejected the argument that this testimony was beyond the scope of chiropractic and was entering the fields of neurology and orthopedics, because the chiropractor spoke of nerves and bone solely in the context of the subluxation he had detected in the plaintiff's spinal column.

The witness in this case, Dr. Wills, was a qualified expert in chiropractic. He obtained his degree as a doctor of chiropractic in 1973 and has practiced in the profession ever since. During the course of his training he studied anatomy, physiology, microbiology, chemistry, bacteriology, and public health. The

doctor of chiropractic program consists of 2 years of preprofessional study and 5 years of professional study, including clinical work. He averages 50 hours per year of continuing education and is currently president of the Nebraska chiropractic association.

Being qualified as an expert, Dr. Wills was properly permitted to testify that, in his opinion, Rodgers' injury was caused by the lifting of a heavy pipe on July 25, 1983, and that the second incident on June 18, 1984, was an exacerbation of the original injury. He was properly permitted to testify regarding the percentage of Rodgers' disability. Sufficient foundation existed for his opinion regarding disability because of his repeated treatments of Rodgers over the years and because of his education in spinal impairment ratings.

The second and third assignments of error are that the court erred in making an award having no competent evidence to support it and erred in making an award for an injury where the only competent evidence showed a different and separate injury was responsible.

Dr. Bruce Claussen, an orthopedic surgeon, examined Rodgers on December 18, 1986, and found no abnormalities in the costosternal area where the breastbone meets the ribs. There were no abnormalities as to the cervical and thoracic spine, and Rodgers had an acceptable range of motion. Rodgers did have some tenderness in the front of the chest in the area where the breastbone meets the ribs, at about the third rib. Dr. Claussen referred Rodgers to a radiologist for x rays. X rays made of the area of the third rib indicated no abnormalities. Dr. Claussen testified that he could not explain the popping sound Rodgers complained of in his ribs, but stated it possibly could be due to the strain of the muscles and the ligaments. Dr. Claussen was of the opinion that the plaintiff had no disability as a result of either of the incidents, but on a "purely speculative basis" it was possible he might have an impairment of 2 to 3 percent or less.

Dr. Wills testified that the cause of Rodgers' first injury on July 25, 1983, was his lifting of the heavy pipe. In describing the relationship between this injury and the wheelbarrow incident on June 18, 1984, he testified that the pain Rodgers felt as he pushed the wheelbarrow was due to an exacerbation of his first

injury. He explained that the injury Rodgers sustained on July 25, 1983, involved a stretching or tearing of the ligaments, in which case there would be a deformation of the connective tissue, resulting in scar tissue which would not allow healing. The popping sound Rodgers reported hearing in his chest was due to joints that were torn loose and did not heal properly. He stated that Rodgers had never healed properly and when Rodgers returned for treatment in June 1984, he treated his condition as an exacerbation of the original injury.

He further testified that Rodgers' injury is a permanent condition with respect to Rodgers' experiencing pain upon heavy lifting, pushing, or pulling.

As to the extent of disability, Dr. Wills was of the opinion that Rodgers had a 15-percent disability as to his work capacity and a reduction of approximately 25 percent of his preinjury capacity for performing such functions as bending, stooping, lifting, pushing, pulling, climbing, or other comparable physical efforts. He explained that work disability does not correlate directly with impairment, in that a patient can have an impairment rating of a certain percentage and a disability rating of a different percentage based upon the type of work that the patient does.

When the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workers' Compensation Court. *Nice v. IBP, inc.*, 226 Neb. 538, 412 N.W.2d 477 (1987); *Ward v. City of Mitchell*, 224 Neb. 711, 400 N.W.2d 862 (1987).

A finding with regard to causation of an injury will not be set aside unless clearly wrong. *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 417 N.W.2d 164 (1987). The findings of fact made by the Workers' Compensation Court after rehearing have the same effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Kuticka v. University of Nebraska-Lincoln*, 227 Neb. 565, 418 N.W.2d 593 (1988).

Since there was competent testimony to support the award for Rodgers, the judgment of the compensation court is affirmed.

The plaintiff is allowed $1,000 for the services of his attorney in this court.

AFFIRMED.