SHARLENE S. FLOYD, APPELLANT, V. MICHAEL WOROBEC, APPELLEE.

537 N.W.2d 512

Filed September 29, 1995. No. S-93-960.

Lee R. Terry, of Terry & Kratville, for appellant.

Michael F. Coyle and Michael J. Mooney, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. INTRODUCTION

In this negligence action arising out of the collision of two motor vehicles, the district court entered judgment pursuant to the verdict in favor of the defendant–appellee, Michael Worobec, against the plaintiff–appellant, Sharlene S. Floyd, thereby dismissing Floyd's petition. Floyd appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in (1) not directing a verdict in her favor on the issue of liability and (2) excluding certain testimony from her treating chiropractor and consequently instructing improperly on the issue of damages. In order to regulate the caseloads of the appellate courts, we on our own motion removed the matter to this court; we now reverse the judgment of the district court and remand the cause for a new trial.

## II. FACTS

On the clear and dry afternoon of February 25, 1989, Floyd was driving an automobile in Omaha westbound on Martha Street, a two–lane blacktop street accommodating eastbound and westbound traffic and inclining upward from 13th Street toward 16th Street.

At its intersection with 15th Street, Martha Street is protected by signs commanding northbound and southbound traffic on 15th Street to stop. Floyd testified that as she approached that intersection, she scanned the area and, finding it to be clear, kept traveling at 20 to 25 miles per hour. She was able to see northbound and southbound traffic and the stop signs on both sides of 15th Street. There was no traffic on the north side of 15th Street, and she had an unobstructed view of a "big pickup truck" on the south side which appeared to be stopped. When she was in the intersection, she saw something in her peripheral vision and upon turning to look saw a truck. She sounded her horn and tried to accelerate, but was struck while in the westbound lane of travel on Martha Street. She could not recall how long it was between the time she saw the truck and sounded her horn and the time she was struck. At her pretrial deposition, Floyd testified that when she saw the truck which struck her, it was 25 feet from her, but at trial she changed her estimate to

its being "about a hundred feet away." Upon exiting from her automobile, she noticed that its left rear quarter panel had been damaged.

According to Worobec, he was driving his truck northbound on 15th Street and came to a complete stop at the stop sign at the intersection of 15th and Martha Streets. He could see traffic eastbound on Martha Street, but a "big truck" parked at the east corner of the intersection on Martha Street obstructed his view of westbound traffic. Worobec looked to his left but did not see any vehicles. As his vision to his right was blocked by the truck, he pulled out "[s]lowly, very slowly." As he did so, he kept a lookout for traffic. Worobec stated that he did not see Floyd's vehicle before impact and that the collision occurred in the middle of Martha Street. He told Officer Edward Garaczkowski of the Omaha Police Division, who investigated the collision, that he (Worobec) felt Floyd was speeding.

Garaczkowski testified that there was nothing in his report showing that Worobec's view was obstructed. However, he admitted that he did not mark "none" on his police report in response to the different things that one can check for a motorist not seeing danger. As there was no debris on the street or serious injury involved, Garaczkowski did not chart skid marks or the point of impact.

Floyd's treating chiropractor, Dr. Leslie J. Wilkie, who practiced in Missouri, testified that after finishing a premedical course at the University of Kansas, he attended and graduated from the National College of Chiropractic at Lombard, Illinois. In addition, he has pursued several postgraduate specialties, primarily

> different types of technique. . . . The specialties in regard to whiplash type injuries of the neck, [he has] had great interest in that. [He has] also pursued with a great deal of time applied kinesiology which is the utilization of muscle testing and nerve reflex to help ascertain the condition of a person . . . and in that respect [has] done probably close to 200, 250 hours of additional study in that line. . . . [He] also [has] great interest in testing of a patient in regard to computerized muscle testing, different types of evaluating a patient so that [he] can better establish where the patient

really is and how to help them.

Wilkie first saw Floyd in his office on June 28, 1989, at which time he obtained a history and conducted a standard physical examination. That was followed "with a chiropractic/orthopedic/neurological examination of the affected areas. Following that [he] did an x-ray . . . . From that point [he] . . . did kinesiological examinations . . . ." He continued to treat Floyd through January 8, 1993, and performed over 200 adjustments to her spine during that time.

On the basis that proper foundation was lacking, the district court precluded Wilkie from testifying that based on a reasonable degree of chiropractic probability, Floyd's injuries "are going to be of a permanent periodic nature." Neither was Wilkie permitted to testify based on "a reasonable degree of chiropractic care and treatment . . . how many future treatments on an average . . . Floyd should receive."

## III. ANALYSIS

### 1. DIRECTED VERDICT

In her first assignment of error, Floyd asserts the district court should have sustained the motion for directed verdict she made at the close of all the evidence on the issue of Worobec's liability to her and should have instructed the jury to return a verdict in her favor on that issue.

#### (a) Scope of Review

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. See, *Winslow v. Hammer,* 247 Neb. 418, 527 N.W.2d 631 (1995); *Holman v. Papio-Missouri River Nat. Resources Dist.,* 246 Neb. 787, 523 N.W.2d 510 (1994).

#### (b) Application of Law to Facts

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is lodged is entitled to have

every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Wolf v. Walt,* 247 Neb. 858, 530 N.W.2d 890 (1995).

Thus, for purposes of this appeal, we must accept as true that there was a "big truck" parked at the southeast corner of the intersection of Martha and 15th Streets which blocked Worobec's view of westbound traffic on Martha Street, that Worobec pulled out from the intersection very slowly, that Worobec kept a constant lookout for other vehicles, and that the collision occurred in the middle of the road rather than in Floyd's lane. Since Worobec failed to see Floyd's automobile until impact, his feeling that Floyd was speeding has no evidential value whatsoever. It must therefore be concluded that Floyd was driving at 20 to 25 miles per hour.

A motorist is required to yield the right-of-way to a vehicle traveling on a street protected by stop signs if the vehicle on the protected street is close enough to the intersection to pose an immediate hazard. *Kasper v. Carlson,* 232 Neb. 170, 440 N.W.2d 195 (1989). Moreover, a driver has a duty to look both to the right and to the left and to maintain a proper lookout for the driver's safety and that of others. *Id.* Consequently, one traveling on a favored street protected by stop signs of which one has knowledge may properly assume, until one has notice to the contrary, that motorists about to enter from a nonfavored street will come to a complete stop as near the right-of-way line as possible and yield the right-of-way to any vehicle approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves into or across the intersection. *Chlopek v. Schmall,* 224 Neb. 78, 396 N.W.2d 103 (1986).

However, a driver approaching an intersection is not in a favored position and entitled to proceed merely because that driver has the right-of-way. See *Hodgson v. Gladem,* 187 Neb. 736, 193 N.W.2d 779 (1972). Thus, while a driver who fails to see another who is in a favored position is negligent as a matter of law, *Getzschman v. Yard Co.,* 229 Neb. 231, 426 N.W.2d 499 (1988), the failure to see an approaching vehicle is not negligence as a matter of law unless the vehicle is "undisputably

located in a favored position," *Jones v. Goeden*, 232 Neb. 177, 180, 440 N.W.2d 199, 202 (1989); *Getzschman v. Yard Co., supra*.

The issue, therefore, is whether Floyd was "undisputably located in a favored position." As stated in *Krul v. Harless*, 222 Neb. 313, 321, 383 N.W.2d 744, 749-50 (1986): "A vehicle is located in a '"favored position"' when it is '"within that radius which denotes the limit of danger,"' . . . a definition which focuses upon the vehicle's geographical proximity to the collision point and the vehicle's favored status under the applicable rules of the road."

While Floyd contradicted herself as to where Worobec's truck was when she first saw it, there is nothing in the evidence from which it can be inferred that Floyd violated any rule of the road so as to forfeit any favored position she otherwise enjoyed or that her automobile was other than within the radius of danger when Worobec proceeded into the intersection. The existence of the parked truck blocking Worobec's view of westbound traffic on Martha Street merely provided a condition, the existence of which Worobec was obligated to take into account. See *Vrba v. Kelly*, 198 Neb. 723, 255 N.W.2d 269 (1977) (stranded vehicle on road only a condition and not concurrent cause of collision). See, also, *Brown v. Nebraska P.P. Dist.*, 209 Neb. 61, 306 N.W.2d 167 (1981) (inanimate objects generally conditions and not causes). Not only must a motorist look at a time when looking would have been effective, but must see what is in plain sight. *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995). Worobec's having failed to see Floyd's automobile under the circumstances presented here establishes that Worobec was negligent as a matter of law.

That being so, and there being no issue pled as to any contributory negligence on Floyd's part, it follows that the district court erred in not granting Floyd's motion for directed verdict.

## 2. EXCLUSION OF EVIDENCE

Although the foregoing determination resolves this appeal, we nonetheless consider the remaining assignment of error, as it presents issues which are likely to reoccur in the new trial we

must order, namely, whether the district court mistakenly prohibited Wilkie from testifying as to the permanency of her injuries and the need for future care.

### (a) Scope of Review

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. See *Stang-Starr v. Byington, ante* p. 103, 532 N.W.2d 26 (1995).

### (b) Application of Law to Facts

We have determined that a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only where there has been an abuse of discretion. *Kroeger v. Ford Motor Co.*, 247 Neb. 323, 527 N.W.2d 178 (1995); *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994). We have also held that the soundness of a trial court's ruling regarding an expert's qualifications depends upon the particular facts of the case. *Kroeger v. Ford Motor Co., supra.*

Floyd argues that the district court abused its discretion in refusing the proffered testimony of Wilkie because, based on his education and training alone, Wilkie was qualified as an expert to give testimony regarding the permanency of her injuries and the number and extent of future treatments required and that as a consequence, the district court's instructions on damages were deficient.

The answer to Floyd's claims is controlled by *Fries v. Goldsby*, 163 Neb. 424, 80 N.W.2d 171 (1956), and *Rodgers v. Sparks*, 228 Neb. 191, 421 N.W.2d 785 (1988). In *Fries v. Goldsby, supra*, a negligence action, a graduate of a chiropractic college duly licensed to practice as a chiropractor and holding membership in the National Chiropractic Roentgenologist Association took a history from the plaintiff, examined her, and x-rayed her. He then diagnosed the plaintiff's injuries, prescribed her care and treatment, and treated her. In ruling that the trial court erred in excluding the chiropractor's interpretations and explanations of the x rays he had taken, we adopted the reasoning of other courts that "a duly licensed and practicing chiropractor is competent to testify as an expert

witness within the scope of his knowledge according to his qualifications in the field of chiropractics, and the weight of his testimony is a question for the jury." *Id.* at 435, 80 N.W.2d at 178.

In *Rodgers v. Sparks, supra,* a workers' compensation action, the question was whether, given the *Fries* rule, opinions concerning "causation and permanency are within the scope of the field of chiropractic." *Rodgers v. Sparks,* 228 Neb. at 197, 421 N.W.2d at 789. After reviewing the relevant statutes and concluding that the practice of chiropractic is not the practice of medicine and surgery, we nonetheless concluded that a licensed and practicing chiropractor who had examined and x-rayed the claimant and had diagnosed his condition and treated it was, by virtue of education in spinal impairment ratings and treatment of the claimant, competent to testify that the claimant's injury was caused by the industrial accident in question, was exacerbated by a subsequent incident, and produced stated percentages of physical impairment and work capacity.

Thus, given Wilkie's other qualifications, had it been proved that he was licensed to practice chiropractic, it would have been an abuse of discretion for the district court to declare him incompetent to testify that, based upon a reasonable degree of chiropractic certainty, Floyd's injuries were of a "permanent periodic nature" and as to the future course of treatment. But the record does not establish that Wilkie was licensed to practice chiropractic. It therefore cannot be said that it was an abuse of discretion for the district court to have excluded the opinions of one engaged in a licensed profession but not shown to have been licensed.

Accordingly, it cannot be said the district court erred in excluding Wilkie's testimony.

## IV. JUDGMENT

Because the district court erred in not sustaining Floyd's motion for directed verdict on the issue of liability, the judgment of the district court is, as first noted in part I above, reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.