KERRY CORCORAN, APPELLANT, V.
NATHANIEL LOVERCHECK, APPELLEE.

594 N.W.2d 615

Filed May 21, 1999.   No. S-97-359.

Dan L. McCord, of McCord & Burns Law Firm, for appellant.

Stephanie Frazier Stacy and Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is a personal injury action arising from a traffic accident which occurred in Lincoln, Nebraska, on July 7, 1994, involving a motorcycle operated by Kerry Corcoran and an automobile operated by Nathaniel Lovercheck. Corcoran alleged that the accident was proximately caused by Lovercheck's negligence and sought damages for injuries he sustained. Lovercheck denied that he was negligent and alleged that Corcoran was contributorily negligent. At trial, the district court for Lancaster County denied both parties' motions for a directed verdict, and a jury returned a verdict in favor of Lovercheck upon which judgment was entered. Following denial of Corcoran's motion for a new trial, Corcoran perfected this appeal. In an unpublished opinion, the Nebraska Court of Appeals reversed, and remanded for a new trial based upon its determination that the trial court erred in instructing the jury on the issue of contributory negligence. See *Corcoran v. Lovercheck*, No. A-97-359, 1998 WL 800966 (Neb. App. Nov. 10, 1998) (not designated for permanent publication). We granted Lovercheck's petition for further review and affirm the judgment of the Court of Appeals as modified.

## FACTS

The accident occurred at approximately 3:20 p.m. at the intersection of South 24th Street and Randolph Bypass in Lincoln. Immediately prior to the accident, Lovercheck was operating a 1985 Chevrolet Celebrity northbound on South 24th Street, and Corcoran was operating a 1986 Yamaha Fazer motorcycle eastbound on Randolph Bypass. The intersection was controlled by a stop sign for northbound traffic on South 24th Street.

Lovercheck testified that he stopped at the stop sign and looked to his left and right. He had an unobstructed view to his right, but his view of eastbound traffic approaching from his left was partially obstructed by vehicles parked along the south curb of Randolph Bypass. Lovercheck proceeded forward and

looked to his left again but did not see an approaching vehicle. Lovercheck then rolled forward while continuing to look to his left, and when his vehicle was "about a third of the way over the center line" of Randolph Bypass, he observed the motorcycle operated by Corcoran approaching from his left at a distance of 60 to 80 feet. At that point, Lovercheck realized that an accident would probably occur and responded by accelerating to get out of the way of the approaching motorcycle. As he did so, he looked to his left and observed the motorcycle "wobbling."

Corcoran, an experienced motorcyclist, testified that he was proceeding east on Randolph Bypass, approaching its intersection with South 24th Street at the posted speed limit of 25 m.p.h. with the high beam of the motorcycle's headlight illuminated. When he was 35 to 40 feet away from the intersection, he observed the vehicle operated by Lovercheck proceed into the intersection and stop. He immediately applied his brakes and, upon making eye contact with Lovercheck, steered his motorcycle hard to the right while continuing to apply his brakes in an effort to avoid a collision with Lovercheck's vehicle. As he executed this maneuver, the motorcycle "went into slide and laid down and slid past the rear" of Lovercheck's vehicle, throwing Corcoran from the motorcycle and causing injury to the right side of his body.

A Lincoln police officer who investigated the accident testified that it occurred within the intersection in Corcoran's lane of travel and that Corcoran had to take quick evasive action in order to avoid a collision with Lovercheck's vehicle.

## ASSIGNMENTS OF ERROR

In his petition for further review, Lovercheck asserts that the Court of Appeals erred (1) in concluding that the evidence did not support the trial court's giving an instruction regarding contributory negligence and (2) in reversing and remanding for a new trial when any error in the trial court's instructing the jury regarding contributory negligence was harmless as a matter of law.

## STANDARD OF REVIEW

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but

one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999).

In reviewing the action of a trial court, an appellate court must treat a motion for a directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Id.*

## ANALYSIS

Although Lovercheck's answer included four specific allegations of contributory negligence, the jury was instructed to determine only whether Corcoran was negligent in failing to keep the motorcycle he was operating under reasonable and proper control and in failing to maintain a proper lookout. Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury. *Kappenman v. Heule*, 241 Neb. 54, 486 N.W.2d 27 (1992).

In *Kappenman*, a motorcyclist was injured when he intentionally laid down his motorcycle in order to avoid a collision with a vehicle which had pulled out from a stop sign as the motorcyclist approached the intersection. The motorcyclist testified that when he was faced with the potentially dangerous situation, he acted in a manner most likely to spare himself injury. We concluded that there was no competent evidence that the motorcyclist acted in breach of his duty to protect himself from injury and that therefore, the trial court's instructing the jury on contributory negligence constituted reversible error.

In an attempt to distinguish *Kappenman*, Lovercheck argues that that case did not involve an issue of reasonable control because "when one lays their motorcycle down intentionally, it cannot be said that they 'lost control' of the bike. Instead, it is more accurate to say they chose to control the bike by laying it

down." Memorandum brief for appellee in support of petition for further review at 5. This argument ignores the fact that in *Kappenman*, there was evidence that as the plaintiff was attempting to "lay down" his motorcycle in order to avoid being hit by the defendant's vehicle, he "lost control just before the motorcycle he was riding tipped over while he was still on it," resulting in injury. 241 Neb. at 56, 486 N.W.2d at 29.

Similarly, it is clear from the record in this case that Corcoran lost control of his motorcycle *after* initiating an evasive maneuver in an effort to avoid colliding with Lovercheck's vehicle after it had entered the intersection. When asked if he could have done anything else to avoid the accident, Corcoran testified:

Honestly, no. Actually, I feel more lucky that I reacted as quickly as I did due to the simple fact that there was no way for me to go forward. There was no reaction time other than for me to apply the brakes and try to avoid collision with [Lovercheck's] vehicle, that's why I did pull as quickly to the right. I was just glad I was paying attention when I was and not focused away or my attention was drawn to anything else other than his vehicle.

There is no evidence contradicting Corcoran's testimony that he was maintaining a proper lookout and traveling at a lawful and reasonable rate of speed immediately prior to the accident. There is also no evidence that Corcoran did not act reasonably to protect himself from injury. Thus, the Court of Appeals was correct in concluding on the basis of *Kappenman* that the trial court erred in submitting the issue of contributory negligence to the jury.

However, there is merit to Lovercheck's argument that this error did not require reversal. Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995). Where a jury, using a special verdict form, finds no negligence on the part of the defendant and, accordingly, does not reach the question of the plaintiff's contributory negligence,

any error in giving a contributory negligence instruction is harmless and does not require reversal of a verdict in favor of the defendant. *Hoover, supra.* See *Bunnell, supra.*

In the present case, the jury was instructed to return a verdict for Lovercheck utilizing "Verdict Form No. 2" if it concluded that Corcoran had not met his burden of proof. Separate verdict forms and corresponding instructions were provided for the jury's use if it reached the issue of contributory negligence. The jury returned Verdict Form No. 2, which necessarily meant that it found no negligence on the part of Lovercheck and that it therefore did not need to consider the issue of contributory negligence. Under *Hoover* and *Bunnell*, the trial court's instruction on contributory negligence was harmless error.

In Corcoran's response to Lovercheck's petition for further review, filed pursuant to Neb. Ct. R. of Prac. 2F(4) (rev. 1997), Corcoran argues that reversal for a new trial is nevertheless required because the district court erred in not finding Lovercheck negligent as a matter of law and in not directing a verdict on the issue of liability. Although these errors were assigned by Corcoran and rejected by the Court of Appeals, Corcoran did not petition for further review of that determination. We have held that upon granting further review which results in the reversal of a decision of the Court of Appeals, this court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. *Lange v. Crouse Cartage Co.*, 253 Neb. 718, 572 N.W.2d 351 (1998); *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995); *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994). However, we have not addressed the question posed by Corcoran's argument, which is whether, upon determining that the Court of Appeals erred in ordering reversal on one of several assignments of error, we may then consider whether reversal is nevertheless required under an assignment of error which the Court of Appeals considered and determined to be without merit, in the absence of a petition for further review with respect to that determination.

The statutory basis for our review of judgments of the Court of Appeals is Neb. Rev. Stat. § 24-1107 (Reissue 1995), which provides: "Within thirty days after the Court of Appeals has

issued its decision in a case, any party to the case may petition the Supreme Court for further review of the decision in the manner prescribed by the rules of the Supreme Court." Further review by this court is not a matter of right, but of judicial discretion. See Neb. Ct. R. of Prac. 2G (rev. 1999). Our rules permit a party to file a written response to another party's petition for further review but do not specifically provide for a cross-petition for further review. See rule 2F(4). No mandate will issue during the time allowed for filing a petition for further review or, if a petition for further review is sustained, during the pendency of the appeal in the Supreme Court. Neb. Ct. R. of Prac. 2F(7) (rev. 1996). If further review is granted, the Supreme Court will review only the errors assigned in the petition for further review and discussed in the supporting memorandum brief. The Supreme Court may limit the issues to one or more of those raised by the parties, and may notice plain error at its discretion. See rule 2G.

When reviewing judgments of the trial courts, we have long adhered to the principle that a proper result will not be reversed merely because it was reached for the wrong reasons. *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997); *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997); *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). In other jurisdictions, state supreme courts have applied the same rule when reviewing a judgment of an intermediate appellate court. See, *Robinson, Admx. v. Workman*, 9 Ill. 2d 420, 137 N.E.2d 804 (1956); *Const. and Gen. Labor Union v. Stephenson*, 148 Tex. 434, 225 S.W.2d 958 (1950); *Hetrick v. Power Co.*, 141 Ohio St. 347, 48 N.E.2d 103 (1943); 5 C.J.S. *Appeal and Error* § 843 (1993). While an opinion setting forth the reasoning of the Court of Appeals is entitled to our serious consideration, it is the judgment entered by that court which we must ultimately address when a petition for further review is granted. We conclude that the interests of justice are best served by following the same principle which governs our review of the trial courts and therefore hold that upon further review from a judgment of the Court of Appeals, this court will not reverse a judgment which we deem to be correct merely because we may disagree with the reasoning employed by the Court of

Appeals. We therefore address Corcoran's argument that reversal and a new trial are required because the trial court erred in not finding Lovercheck negligent as a matter of law and in not directing a verdict on liability, notwithstanding the Court of Appeals' disposition of this issue.

A motorist is required to yield the right-of-way to a vehicle traveling on a street protected by stop signs if the vehicle on the protected street is close enough to the intersection to pose an immediate hazard. *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995); *Kasper v. Carlson*, 232 Neb. 170, 440 N.W.2d 195 (1989). Additionally, a motorist has a duty to look both to the right and to the left and to maintain a proper lookout for the motorist's safety and that of others. *Id.* A motorist in this circumstance must look at a time when looking would have been effective and must see what is in plain sight. *Floyd, supra*; *Huntwork v. Voss*, 247 Neb. 184, 525 N.W.2d 632 (1995). Consequently, one traveling on a favored street protected by stop signs of which one has knowledge may properly assume, until one has notice to the contrary, that motorists about to enter from a nonfavored street will come to a complete stop as near the right-of-way line as possible and yield the right-of-way to any vehicle approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves into or across the intersection. *Floyd, supra*; *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986).

However, a motorist approaching an intersection is not in a favored position and entitled to proceed merely because that motorist has the right-of-way. *Floyd, supra*. While a driver who fails to see another who is in a favored position is negligent as a matter of law, the failure to see an approaching vehicle is not negligence as a matter of law unless the approaching vehicle is undisputably located in a favored position. *Floyd, supra*, citing *Jones v. Goeden*, 232 Neb. 177, 440 N.W.2d 199 (1989), and *Getzschman v. Yard Co.*, 229 Neb. 231, 426 N.W.2d 499 (1988).

In addition, Neb. Rev. Stat. § 60-6,148(2) (Reissue 1998) provides in part:

> [E]very driver of a vehicle approaching an intersection where a stop is indicated by a stop sign shall stop at a clearly marked stop line or shall stop, if there is no such

line, before entering the crosswalk on the near side of the intersection or, if no crosswalk is indicated, at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, such driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on such highway as to constitute an immediate hazard if such driver moved across or into such intersection.

Whether Lovercheck was negligent as a matter of law therefore depends upon whether Corcoran was undisputably located in a favored position. " 'A vehicle is located in a " ' "favored position" ' " when it is " ' "within that radius which denotes the limit of danger," ' " . . . a definition which focuses upon the vehicle's geographical proximity to the collision point and the vehicle's favored status under the applicable rules of the road.' " *Floyd*, 248 Neb. at 611, 537 N.W.2d at 516, quoting *Krul v. Harless*, 222 Neb. 313, 383 N.W.2d 744 (1986).

In *Floyd, supra,* the defendant came to a complete stop at a stop sign and did not see any approaching vehicles when he looked to his left. A truck parked near the intersection obstructed the defendant's view to his right, but he nevertheless proceeded into the intersection slowly, continuing to keep a lookout for traffic. The defendant did not see the plaintiff's vehicle approaching from his right prior to colliding with it in the middle of the intersection. The plaintiff initially stated that she was 25 feet from the defendant's vehicle when she first observed it but later stated that the distance was 100 feet. We stated that notwithstanding the plaintiff's contradictory testimony regarding the distance between her vehicle and that of the defendant when she first observed it, there was no evidence from which it could be inferred that she violated any rule of the road so as to forfeit her favored position or that her vehicle was other than within the radius of danger when the defendant proceeded into the intersection. We further stated that the existence of the parked vehicle which blocked the defendant's view of traffic approaching the intersection from the direction that the plaintiff was traveling "merely provided a condition, the exis-

tence of which [the defendant] was obligated to take into account." 248 Neb. at 611, 537 N.W.2d at 516. Based upon these facts, we concluded that the defendant was negligent as a matter of law and that the district court erred in not granting the plaintiff's motion for directed verdict.

The facts in the present case are directly parallel to those in *Floyd* on the question of whether the plaintiff was undisputably located in a favored position when the defendant entered the intersection. The parked vehicles which partially obstructed Lovercheck's view of traffic approaching the intersection from the west constituted a condition which he was obligated to take into account before proceeding into the intersection. See *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995). There is no evidence that Corcoran was traveling at an excessive rate of speed or that he violated any rule of the road prior to the accident. Each party thought a collision was imminent when he first observed the other. Lovercheck testified that upon entering the intersection, he first observed Corcoran 60 to 80 feet away. At his undisputed rate of speed of 25 m.p.h., or 36.67 feet per second, Corcoran was no more than 2.18 seconds away from the intersection when Lovercheck first saw him. Giving Lovercheck the benefit of all reasonable inferences, we conclude that Corcoran was undisputably located in a favored position and that Lovercheck was therefore negligent as a matter of law. Although there is a question as to whether the vehicles actually collided, it is clear from the record that Corcoran was injured while taking reasonable measures to protect himself from the danger created by the negligence of Lovercheck. Accordingly, we conclude that the district court erred in denying Corcoran's motion for a directed verdict on the issue of liability.

We therefore affirm the judgment of the Court of Appeals which reversed, and remanded the cause to the district court for a new trial, but modify the judgment to require that the district court be directed to enter a directed verdict in favor of Corcoran on the issue of liability and conduct a new trial on the issue of damages only.

AFFIRMED AS MODIFIED.