**Robert WHITTAKER, Defendant Below, Appellant/Cross Appellee,**

v.

**Beverly HOUSTON, Plaintiff Below, Appellee/Cross Appellant.**

No. 406, 2004.

Supreme Court of Delaware.

Submitted: Sept. 7, 2005.
Decided: Nov. 22, 2005.

Michael A. Pedicone, Wilmington, DE, for appellant.

Carol J. Antoff, of Reger & Rizzo, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

RIDGELY, Justice:

This is an appeal from a judgment of the Superior Court awarding damages in a personal injury case arising from an automobile accident. Defendant–Appellant, Robert E. Whittaker, admitted liability for the automobile accident but denied the nature and extent of the injuries claimed by Plaintiff–Appellee Beverly Houston. At trial, Houston and her chiropractor testified on her behalf. Whittaker called an orthopedic surgeon to testify that, at most, Houston had a minor soft tissue injury. Whittaker claims the Superior Court erred in permitting the chiropractor to testify at all, in denying his motion for judgment as a matter of law, and in instructing the jury. Houston claims in a cross-appeal that the Superior Court erred when it precluded testimony from her chiropractor

on causation. We find no merit to Whittaker's claims. We also find that although the Superior Court erred in limiting the testimony of the chiropractor on the facts of this case, the error was harmless. Accordingly, we affirm the judgment of the Superior Court.

## I. Background

The issue of the competency of Houston's chiropractor was first raised by a pre-trial motion in limine filed by Whittaker to exclude the testimony of Dr. Andrew Leitzke at trial. Whittaker argued that Dr. Leitzke, who is licensed to practice chiropractic in Delaware, lacked the qualifications to testify on the causation of Houston's injuries because those opinions were beyond his expertise as a chiropractor. The trial judge ruled that Dr. Leitzke could testify on his findings, treatment and the nature and extent of the injury, including permanency. Notwithstanding this ruling, the trial judge granted Whittaker's motion on the issue of causation by stating, "the chiropractor may not testify as to the causal link between plaintiff's injury and the accident."

The case proceeded to trial with Houston and Dr. Leitzke testifying on her behalf. At the close of plaintiff's case, Whittaker moved for judgment as a matter of law upon the ground that there was no "competent medical testimony" showing that the automobile accident caused Houston's injuries. The trial judge denied the motion because Whittaker's own expert, Dr. Andrew Gelman, opined that if Houston's history was accepted, she had some injury from the accident. The trial judge also noted that Dr. Leitzke testified that Houston was, in fact, injured based upon the description given to him of the automobile accident by his patient.

During the defense case, the testimony of Dr. Andrew Gelman was introduced by deposition pursuant to the pre-trial stipulation and order. Dr. Gelman specifically opined that "Houston had, at most, a minor soft tissue injury affecting the neck and upper back as well as the lower back." He further testified that "[i]f her history is to be believed", Houston did sustain soft tissue injuries from the motor vehicle accident.

After the evidence was presented, the trial judge instructed the jury on the applicable law prior to closing arguments.[1] Regarding the expert witnesses, she explained that "[i]n weighing the expert testimony you may consider the expert's qualifications, the reasons for the expert's opinion, the reliability of the information supporting the expert's opinion, as well as the factors I have previously mentioned for weighing the testimony of any other witness." She further instructed the jury:

> You have heard medical experts being asked to give opinions based on a reasonable medical probability. In Delaware, a medical expert may not speculate about mere possibilities. Instead, the expert may offer an opinion only if it is based on reasonable medical probability. Therefore, in order for you to find a fact based on the expert's testimony, that testimony must be based on a reasonable medical probability, not just possibility.

Counsel proceeded with their closing arguments. Houston's counsel referred to the testimony of both doctors in support of her client's claim for damages. Whittaker's counsel argued that the jury should

---

1. *See* Super. Ct. Civ. R. 51 ("The Court may instruct the jury before or after the arguments are completed and, such other times, including prior to the introduction of evidence, as the Court may desire.").

"believe less of what the chiropractor says and more of what Dr. Gelman says." Counsel for Whittaker argued that Dr. Gelman was more credible and contrasted his education and experience as a board certified orthopedic surgeon with Dr. Leitzke's education and experience as a chiropractor. He ended his argument by repeating the trial judge's instruction that an expert's opinion must be based on "reasonable *medical* probabilities." He added, "Now, I kept stressing the word, medical, because when Dr. Leitzke gave his ultimate opinions, what he gave his opinions to were a reasonable *chiropractic* probability."

Houston's counsel objected and stated to the trial judge her understanding that each expert had been qualified to state an opinion to "a reasonable probability in his own field of expertise." The trial judge then instructed the jury, *sua sponte*, that "for purposes of this case, the term 'chiropractic probability' or 'reasonable chiropractic probability' is the equivalent of reasonable medical probability, and you should not draw a distinction between those terms." Neither counsel for Houston or Whittaker objected to this instruction at trial.

After rebuttal argument by counsel for Houston, the case was submitted to the jury which returned a verdict in favor of Houston for $44,240.00. This appeal followed.

## II. Discussion

Whittaker raises three issues on appeal. Whittaker argues that the Superior Court erred in (1) permitting Dr. Leitzke to testify, (2) denying his motion for judgment as

a matter of law and (3) instructing the jury that the chiropractor's testimony was equivalent to competent medical testimony. Related to Whittaker's first claim is Houston's cross-appeal. Houston argues that the Superior Court improperly precluded Dr. Leitzke from testifying as to causation. We address each of Whittaker's arguments seriatim and will also address Houston's cross-appeal in our discussion of Whittaker's first claim.

### A.

Whittaker claims that the Superior Court erred in permitting the chiropractor to testify because (i) there was no adequate foundation for the chiropractor's testimony, and (ii) the chiropractor's testimony was irrelevant, confusing, and unduly prejudicial. Houston denies these alleged errors and argues Dr. Leitzke also should have been permitted to testify regarding causation. We review the Superior Court's decision to admit or exclude expert testimony for abuse of discretion.[2]

More than twenty-five years ago, President Judge Stiftel of the Superior Court correctly recognized that "the greater weight of authority permits a chiropractor to testify as a medical witness concerning matters within the scope of the profession and practice of chiropractic."[3] The Superior Court cited with approval *Daniels v. Bernard*[4] which quoted 31 Am. Jur. 2d, Expert Opinion Evidence, Section 107 as follows:

A chiropractor is competent to testify as an expert or medical witness concerning matters within the scope of the profession and practice of chiropractic. Where the proper foundation is laid and

2. *M.G. Bancorporation, Inc. v. LeBeau,* 737 A.2d 513 (Del.1999), citing *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

3. *Sussex County Chapter of the SPCA v. Bowers,* 1979 WL 182433 (Del.Super.1979).

4. 270 S.C. 51, 57–58, 240 S.E.2d 518, 521 (1978).

the matter is within the scope of the profession of practice of chiropractic, a chiropractor is competent to express his opinion as to the nature and extent of injuries to portions of the human body to which the chiropractic segment of medical science relates, as to the probable cause of an injury to, or the physical condition or death of, a person, and as to the probable effects and duration, permanence, future medical requirements, or the like, in connection with an injury to or the physical condition of an injured person. A chiropractor is also competent in a personal injury action to interpret an X-ray photograph relating to the injury to or the physical condition of the injured person, where it is properly connected and identified, the witness is qualified or familiar with the use of X-ray photographs, and the subject matter thereof relates to the profession or practice of chiropractic.

Cases from across the nation consistent with this rule may be found in H.D. Warren, *Chiropractor's Competency As Expert in Personal Injury Action As To Injured Person's Condition, Medical Requirements, Nature and Extent of Injury and the Like*, 52 A.L.R.2d 1384 (July 2002). We adopt this general rule.

■ In this case, the trial judge permitted extensive *voir dire* of Dr. Leitzke be-

fore determining the scope of his testimony. The trial judge found a sufficient foundation to allow Dr. Leitzke to testify as an expert including his attendance at a chiropractic school, his passing chiropractic Board exams required in Delaware, attendance at additional courses since graduation, and membership in professional organizations. The record supports a finding that Dr. Leitzke was "qualified as an expert by knowledge, skill, experience, training or education" and that his "specialized knowledge" would assist the jury in understanding the evidence and determining facts in issue.[5] The Superior Court did not abuse its discretion when it allowed Dr. Leitzke to testify as an expert witness.

■ Turning to Houston's cross-appeal, the trial judge found that Dr. Leitzke had not begun treatment of Houston until after the accident, and the Court therefore held that the facts were insufficient to permit Dr. Leitzke to testify regarding causation. However, the general rule we have adopted clearly permits chiropractors to testify as to causation, within their field of expertise. The trial judge permitted the chiropractor to testify regarding all other areas relating to Houston within his field of expertise. We find that it was an abuse of discretion to preclude his testimony on causation of the injuries he treated within the scope of chiropractic practice.[6]

5. D.R.E. 702.

6. The preclusion was also inconsistent with 24 Del. C. § 717 (2003) which provides:
    (a) Any chiropractor who is duly licensed as a chiropractic practitioner under this chapter shall be deemed competent to offer opinions in the courts, administrative agencies and other tribunals of this State as to matters of causation, within the scope of chiropractic practice, provided the testimony is offered to a reasonable degree of chiropractic certainty and there is otherwise an adequate foundation for the admission of this testimony.

    (b) Any chiropractor duly licensed under this chapter shall also be deemed competent to offer opinions in the courts, administrative agencies and other tribunals of this State as to matters of permanent impairment or disability, provided the testimony is within the scope of chiropractic practice, is offered to a reasonable degree of chiropractic certainty and there is otherwise an adequate foundation of the admission of this testimony. (74 Del. Laws, c. 5, § 1.)

However, on the record before us, this error was harmless because the jury necessarily found by its verdict that the accident caused Houston's injuries.

## B.

Whittaker next argues that Houston did not introduce evidence sufficient for a finding of causation, and therefore the Superior Court erred when it denied the motion for judgment as a matter of law. We review *de novo* whether a trial court erred in denying a motion for judgment as a matter of law.[7]

When the evidence is viewed in a light most favorable to the nonmoving party, there was sufficient evidence to show causation between the accident and Houston's injuries. As the Superior Court recognized, Dr. Leitzke did testify on the fact of injury based upon a description of the accident from his patient. Dr. Gelman's testimony, which was to be introduced, also supported causation if the history from Houston was to be believed. Either party could present Dr. Gelman's testimony in the case.[8] The trial judge certainly could have allowed Houston to reopen her case to present his testimony. Here, the trial judge simply anticipated that evidence in her ruling on Whittaker's motion. We hold that the trial judge did not abuse her discretion in referring to Dr. Gleman's expected testimony nor did she err when she denied Whittaker's motion for judgment as a matter of law.

## C.

Finally, Whittaker argues that the Superior Court impermissibly characterized the chiropractor's testimony as equivalent to competent medical testimony when it instructed the jury that "for the purposes of this case, the term, 'chiropractic probability' or 'reasonable chiropractic probability' is the equivalent of reasonable medical probability." Whittaker did not object to this jury instruction at trial. When counsel does not object to a jury instruction at trial, the appropriate standard of review is plain error.[9] The error

> must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character; and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.[10]

A defendant enjoys the "unqualified right" to a correct statement of the law,[11] but we reverse only where "an inaccuracy in the instructions may lead to confusion that undermines either the jury's ability to reach a verdict or our confidence in their

---

7. *Trievel v. Sabo*, 714 A.2d 742 (Del.1998).

8. The Pretrial Stipulation in this case identified Dr. Gelman as a witness and provided, in part, "Plaintiff reserves the right to call any witnesses named by Defendant."

9. *See Bullock v. State*, 775 A.2d 1043, 1046–47 (Del.2001).

10. *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986) (citations omitted). *See Dawson v. State*, Del.Supr., 637 A.2d 57, 62–63 (1994); *Bowe v. State*, Del.Supr., 514 A.2d 408, 410–11 (1986). *See also* 1–2 Weinstein's Evidence § 103 at [7][a] (2005). Plain error is an error that affects the defendant's substantial rights and would seriously affect the fairness, integrity, or public reputation of judicial proceedings if left uncorrected; so clear-cut, so obvious, a competent judge should be able to avoid it without benefit of objection.

11. *Bordley v. State*, 832 A.2d 1250 (Del.2003).

ability to do so fairly under the circumstances..." [12]

In this case, equating "reasonable chiropractic probability" and "reasonable medical probability" did not rise to plain error because it was not error, plain or otherwise, for the Superior Court to clarify for the jury that the testimony of both experts had to be based upon probabilities and not possibilities. The purpose of the jury instruction, which was amended by the trial judge's statement, is to ensure that a verdict is not based upon a speculative opinion of a medical expert regardless of his specialty or expertise. Furthermore, the "practice of chiropractic" [13] clearly pertains to the science or art of preserving health. The trial judge did not err when she included the testimony of the chiropractor within the broad category of a medical expert.[14]

### III.   Conclusion

█ A chiropractor may testify in a personal injury action as an expert or medical witness on matters within the scope of the profession and "practice of chiropractic." In this case, the Superior Court did not abuse its discretion when it allowed the chiropractor to testify as an expert witness, but it also should have allowed testimony from the chiropractor within the scope of that profession on the matter of causation. The preclusion of that testimony was harmless error. Because we find no reversible error, the judgment of the Superior Court is affirmed.

---

12.   *Allen v. State,* 868 A.2d 837, 839 (2005).

13.   *See* 24 Del. C. § 701, Chiropractic defined; limitation of chiropractic license.
    b.   The practice of chiropractic includes, but in not limited to, the diagnosing and locating of misaligned or displaced vertegrae (subluxation complex), using x-rays and other diagnostic test procedures. Practice of chiropractic includes the treatment through manipulation/adjustment of the spine and other skeletal structures and the use of adjunctive procedures not otherwise prohibited by the chapter.

14.   *See, e.g., Lowman v. Kuecker,* 246 Iowa 1227, 71 N.W.2d 586, 588 (Iowa, 1955) (holding that the term "medical" pertains to the science or art of preserving health and can be properly applied to the practice of chiroprac-

tic); *Klein v. Harper,* 186 N.W.2d 426, 431 (N.D., 1971) (ruling that the practice of chiropractic is the practice of medicine in a restricted form); *McKissick v. Frye,* 255 Kan. 566, 876 P.2d 1371, 1390 (1994) (stating that the practice of chiropractic is recognized as a healing art so that a chiropractor is qualified to testify regarding future medical care the plaintiff would need); *Rodgers v. Sparks,* 228 Neb. 191, 421 N.W.2d 785, 790 (1988) (ruling that chiropractic testimony was "competent medical testimony" on the issues of causation and permanent impairment); and *Knapp v. Wilkins,* 786 So.2d 457, 462 (Ala.2000) (recognizing that a licensed chiropractor is a health care provider competent to testify as a medical expert).