**Herbert M. TEAGUE, Sr., et. al.,**
**Plaintiff Below, Appellant,**

v.

**KENT GENERAL HOSPITAL, et. al.,**
**Defendant Below, Appellee.**

No. 483, 2007.

Supreme Court of Delaware.

Submitted: Sept. 10, 2008.
Decided: Nov. 13, 2008.

---

22. 799 A.2d at 1183.

23. 799 A.2d at 1183–1184.

F. Phillip Renzulli, Schmidt Kirifides Pearson Koutcher and Fridkin, P.C., Wilmington, Delaware for appellant.

Dennis D. Ferri, Morris James LLP, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

**1.** Teague appeals, acting as the administrator of Gloria league's estate and on his own be-

**STEELE, Chief Justice:**

Herbert M. Teague, Sr., the plaintiff below, appeals a Superior Court order denying Teague's motion for a new trial and his motion for reargument of the trial judge's ruling excluding Teague's medical expert's testimony opining on the relevant standard of care and causation in a malpractice case involving the only remaining defendant, Dr. Henry Isiocha.[1]

## FACTS AND PROCEDURAL HISTORY

Teague filed this medical malpractice action following his wife, Gloria D. Teague's, death. On March 24, 2003, Gloria presented to Kent General Hospital complaining of chest pain, shortness of breath, and diaphoresis. Following a series of tests, the hospital discharged Gloria and told her to follow up with her family care physician. Four days later, Gloria visited Dr. Isiocha, a family care physician, in his office. She complained of chest pain for a week, diarrhea, vomiting, and chest congestion. Dr. Isiocha admitted Gloria to Kent General Hospital for dehydration. A few hours later at the hospital, Gloria died of a myocardial infarction.

Teague insists that Dr. Isiocha should have immediately sent Gloria to the emergency room. Because he did not, Teague argues, Gloria died as a result of not receiving immediate testing and treatment for her heart condition.

Pursuant to the Superior Court's pretrial scheduling order, Teague identified Michael Siegal, M.D., an internist and cardiologist, as his expert on the appropriate standard of care and causation. The pretrial scheduling order did not address, and the parties did not stipulate to, an end

half.

date for objecting to the opposing expert's qualifications.

On direct examination, Teague did not ask Dr. Siegal whether, when treating a patient with Gloria's symptoms, a family care physician's standard of care is the same as an internist's and cardiologist's standard of care. Dr. Isiocha did not object to Dr. Siegal's qualifications before or following this direct examination. On cross-examination, however, Dr. Isiocha's counsel asked Dr. Siegal if he was an expert on emergency room physician practice, family practice, or cardiology. Dr. Siegal responded, "I'm here as an expert on the treatment of patients with cardiovascular risk factors who present with chest pain; not any other emergency room issue or family practice issue." Teague neither explained nor cured any possible misconception about Dr. Siegal's ability to opine about the relevant standard of care applying to a family care physician examining and purporting to treat patients with "cardiovascular risk factors" or "who present with chest pain.".

At the close of league's case in chief, the day after Dr. Siegal testified, Dr. Isiocha moved for judgment as a matter of law. Dr. Isiocha asserted that, because Dr. Siegal, an internist/cardiologist not certified as a family care physician, testified on cross examination that he was not able to opine on the appropriate family practice standard of care, he could not satisfy the 18 *Del. C.* § 6854 test that must be met to qualify him as an appropriate medical expert. Dr. Isiocha argued that Dr. Siegal was not "familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify." [2] Without Dr. Siegal's expert medical opinion on the applicable standard of care, Teague could not establish a negligent breach of that standard as required by 18 *Del. C.* § 6853. The trial judge reserved ruling on Dr. Isiocha's motion until after the defense closed.

After the trial judge reserved ruling, Dr. Isiocha presented John E. Hocutt, Jr., M.D., a board certified family practice physician, to render his expert medical opinion on the standard of care that applied to family practice physicians under the circumstances presented. Dr. Hocutt opined that, under the circumstances, it would have been "excessively cautious" to send a patient with Gloria's symptoms to the emergency room. Dr. Isiocha also presented Dr. Andrew Doorey, a cardiologist, who opined that a "silent heart attack likely caused Gloria's death"—implying a heart condition about which no one could have known.

After the close of Dr. Isiocha's case, the trial judge heard Dr. Isiocha's motion for judgment as a matter of law. Dr. Isiocha argued that Dr. Siegal's disclaimer or limiting language about the scope of his proffered opinion about the standard of care applicable to a family practice physician under the circumstances presented to him constituted an admission that he could not opine on the relevant standard of care. Teague, on the other hand, maintained that Dr. Siegal could competently testify about the applicable standard of care because his certified specialty as a cardiologist and an internist is similar to family medicine for the purpose of diagnosing similar ailments and making appropriate treatment referrals.

The trial judge acknowledged that Dr. Siegal could not identify the differences in the training programs between a cardiologist and a family physician. The trial judge expressed particular concern about Dr. Siegal's testimony that he was not

**2.** 18 *Del. C.* § 6854.

there to opine about family practice or emergency room issues, but rather about the treatment of patients with cardiovascular risk factors who present with chest pain. The trial judge concluded that Dr. Siegal's testimony failed to establish that the standard of care for his specialty and Dr. Isiocha's specialty were so similar that Dr. Siegal could opine on the standard of care applicable to a family practice physician based on his knowledge and experience as a cardiologist and internist. As a result, the trial judge held that, as a matter of law, the plaintiff did not satisfy the requirements of Section 6854 of title 18, which require the person proffering expert testimony to be "familiar with the degree of skill ordinarily employed in the field of medicine on which he or she will testify." [3] The trial judge's ruling implicitly assumed that the standard of care applicable to a cardiologist or internist differed from the standard applicable to a family physician though all three specialists would in the course of their respective practices be presented with circumstances similar to those displayed by Gloria. Further, implicit in the trial judge's ruling was an assumption that Dr. Siegal conceded that he could not opine on the standard of care applicable to family physicians when he stated: "I'm here as an expert on the treatment of patients with cardiovascular risk factors who present with chest pain; not any other emergency room issue or family practice issue."

Teague alternatively requested an opportunity to *voir dire* the doctor over the telephone, as Dr. Siegal was unavailable to appear in court for Teague's rebuttal case. The trial judge denied Teague's request to *voir dire* Dr. Siegal "because the jury would not be able to assess the doctor's credibility over the telephone." The trial judge did not identify any other basis for that ruling but we surmise that the trial judge assumed there would be no convenient opportunity, even if the *voir dire* rehabilitated Dr. Siegal, for him to return to court and appear before the jury.

On this record the trial judge granted Dr. Isiocha's motion for judgment as a matter of law. Teague then filed a motion for new trial and a motion for reargument. The trial judge heard both motions as well as a defense motion for costs. In those motions, Teague argued for the first time that Dr. Isiocha had waived his objection to Dr. Siegal's competency by waiting to challenge his proffered opinion until the day after Dr. Siegal's testimony, knowing Dr. Siegal would not be available to return to court. Teague also contended that the trial judge improperly denied *voir dire* by telephone because that re-examination could have rehabilitated Dr. Siegal's competency to testify on the applicable standard of care. Teague argued that, had the trial judge permitted *voir dire,* Dr. Siegal could have clarified his testimony in a way that fulfilled the requirements of Sections 6853 and 6854. The trial judge denied league's motions and granted Dr. Isiocha's motion for costs.

### ANALYSIS

We review *de novo* decisions denying a motion for judgment as a matter of law.[4] We review decisions to admit or to exclude expert testimony for abuse of discretion.[5]

3. *Id.*

4. *Whittaker v. Houston,* 888 A.2d 219, 224 (Del.2005).

5. *Sammons v. Doctors for Emergency Servs., P.A.,* 913 A.2d 519, 535 (Del.2006); *see Bush v. HMO of Delaware, Inc.,* 702 A.2d 921, 923 (Del.1997) (a trial judge's restriction of an expert's testimony is reviewed for abuse of discretion).

Teague relied solely on Dr. Siegal's testimony to establish that Dr. Isiocha's alleged failure to meet the appropriate standard of care caused Gloria's death. Because the plaintiff bears the initial burden of presenting expert medical testimony regarding an alleged deviation from the applicable standard of care and causation, the trial judge's rulings finding Dr. Siegal incompetent to opine on the appropriate standard of care and refusing to allow rehabilitation by telephone on *voir dire* emasculated Teague's case.[6]

On appeal, Teague reargues the same points he made in response to the motions for judgment as a matter of law, for reargument, and for a new trial. First, Teague challenges the timing of Dr. Isiocha's objection to Dr. Siegal and the resulting motion for judgment as a matter of law. Second, Teague argues that the trial judge abused his discretion when he denied league's request to rehabilitate Dr. Siegal by *"voir dire"* on the telephone, league insists that he could have satisfied Sections 6853 and 6854 of title 18, had the trial judge permitted him to *voir dire* Dr. Siegal.

## I. *Dr. Isiocha Made a Timely Motion for Judgment as a Matter of Law.*

██ Teague contends that Dr. Isiocha made an untimely motion challenging Dr. Siegal's competency to testify on the standard of care applicable to a family physician. Interestingly, on appeal, league does not question that Dr. Siegal, as a cardiologist/internist, cannot opine on the standard of care applicable to a family physician in the circumstances of this case. Teague contends that he properly identified Dr. Siegal as his standard of care and causation expert pursuant to Delaware Superior Civil Rule 26(b)(4) and that Dr. Isiocha's counsel had deposed Dr. Siegal for discov-

ery purposes well in advance of trial. Teague further contends that, if Dr. Isiocha questioned Dr. Siegal's competency, then Dr. Isiocha should have moved to disqualify him pretrial or challenged Dr. Siegal before or at the time of Dr. Siegal's testimony regarding the applicable standard of care. Had Dr. Isiocha objected earlier, league claims, he would have been on notice that Dr. Isiocha intended to challenge Dr. Siegal's opinion, and would have been able sufficiently to address Dr. Siegal's competence to speak to the applicable standard of care during his direct testimony.

Dr. Isiocha counters that he did move timely because he first became aware of Dr. Siegal's inability to testify about the applicable standard of care during Dr. Siegal's direct examination. Dr. Isiocha, unsurprisingly, agrees with the trial judge's conclusions that, without that crucial testimony, Dr. Siegal could not opine on the relevant standard of care and causation and that Teague failed to meet his burden under Section 6854.

Dr. Isiocha is technically correct that he did not need to question Dr. Siegal's competency to opine on standard of care and causation until cross examination. Dr. Isiocha did not base his motion on mandatory discoverable pretrial information, i.e. "experts" credentials or a lack of the necessary discoverable items under Superior Court Civil Rule 26(b)(4). Rather, Dr. Isiocha moved for a judgment as a matter of law, relying on Dr. Siegal's direct testimony that raised for the first time Dr. Siegal's ambiguously expressed reluctance to address "emergency room or family practice" issues. We note that parties may stipulate in a pretrial order to an end date for objections to opposing experts' competence to testify about the applicable

---

6. *Russell v. Kanaga*, 571 A.2d 724, 732 (Del. 1990).

standard of care.[7] Such a stipulation would have prevented the problem that occurred in this case by forcing the issue before the expense of trial. Rule 16, however, neither requires that parties object pretrial nor that trial judges impose a deadline for objections.[8]

Teague insists that *AMI Sebastian Hall v. Radnich*[9] holds that a failure to object to an expert in the pretrial stipulation or deposition waives the right to object when the expert testifies at trial. Teague's reliance on *AMI* is misplaced. The trial judge in *AMI* referred to that issue in *dicta,* implicitly suggesting that the issue of the expert's competency to testify on the applicable standard of care would have been clearly drawn pretrial. Here, however, the issue did not arise until Dr. Siegal introduced it by his remarkable disclaimer seemingly limiting his own professed ability to address family and emergency room practice issues.[10]

There can be no question that Dr. Siegal testified about his ability to opine on the applicable standard of care somewhat ambiguously. Teague should have realized that Dr. Siegal's direct testimony obscured the standards applicable to cardiologists, internists and family practice physicians and that further foundational questions on direct examination were necessary. Furthermore, Teague could have used his redirect examination to clarify Dr. Siegal's statement that: "I'm here as an expert on the treatment of patients with cardiovascular risk factors who present with chest pain; not any other emergency room issue

or family practice issue." Teague did nothing to rehabilitate Dr. Siegal until his unsuccessful attempt to seek telephonic *voir dire* after the case closed, and after Dr. Isiocha's counsel had moved for judgment as a matter of law.

A motion for judgment as a matter of law is proper when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the plaintiff] on that issue." [11] When Teague's expert's testimony on standard of care and causation failed to identify and define the standard of care applicable to a family care physician under the circumstances presented, the jury had no legally sufficient evidentiary basis to find for Teague on his claim that Dr. Isiocha acted negligently by breaching the applicable standard of care in a manner that caused Gloria's death. Dr. Isiocha made a timely motion after Teague had completed his case in chief. The procedural rules do not compel him to do so earlier to afford Teague an opportunity to rehabilitate Dr. Siegal before the trial judge's ruling.[12]

We acknowledge that the legal issues presented here arose under unusual circumstances. Although the trial judge possessed all of the necessary facts to rule on Dr. Isiocha's motion for judgment as a matter of law at the end of Teague's case in chief, the trial judge did not abuse his discretion by waiting until the end of the defense case. Similarly, although Dr. Isiocha *could* have sought to exclude Dr. Siegal's testimony before trial if he had some

---

7. A trial judge may, however, grant a motion to amend a stipulation to avoid manifest injustice.

8. Del.Super. Ct. Civ. R. 16.

9. *AMI Sebastian Hall v. Radnich,* 2000 WL 1211279, at *6 (Del.Super.).

10. *Id.*

11. Del.Super. Ct. Civ. R. 50(a)(1).

12. *See id.* at (a)(1) and (a)(2) (stating that the moving party may move for judgment as a matter of law at any time after the opposing party has been fully heard on the particular issue).

reason to anticipate Dr. Siegal's testimony on direct, Dr. Isiocha was not required to time his motion for judgment as a matter of law to his own prejudice.

## II. The Trial Judge Did Not Abuse His Discretion When He Rejected Teague's Request for Voir Dire of Dr. Siegal on the Telephone.

The trial judge's role as a gatekeeper is not limited to determining whether a proposed expert offers relevant and reliable testimony.[13] The trial judge must also determine if a witness is competent to offer expert opinion testimony.[14] "The judge, in his discretion, *may* permit *voir dire* examination in the presence of or out of the presence of the jury to ascertain if there are sufficient underlying facts or data in the record to permit the expert to testify as to his opinion." [15]

The trial judge denied Teague's request to *voir dire* Dr. Siegal for two independent reasons. First, the trial judge expressed concern that the jury would not be able to assess fully the doctor's credibility over the telephone. That concern, we must assume, rests on a finding that Dr. Siegal would not be reasonably available to testify, after *voir dire* that might rehabilitate him, in person before the jury. While the jury had seen and heard Dr. Siegal testify on direct, cross and redirect, they had heard direct testimony that raised serious implications about his competency to testify on the applicable standard of care. Even if *voir dire* rehabilitated Dr. Siegal to some degree, the jury would not have

been able to observe him respond to *voir dire* as they had seen him testify earlier.

Second, the trial judge made an independent determination that Teague had failed to establish, during Dr. Siegal's direct or redirect testimony that he could competently testify on the relevant standard of care and causation.[16] The trial judge based this determination on: (1) Dr. Siegal's failure to establish that his specialties and Dr. Isiocha's specialty were the same or sufficiently similar; and, (2) Dr. Siegal's stated inability to speak to emergency room or family practice—issues which the trial judge could fairly regard as a disclaimer that Dr. Siegal knew the standard of care applicable to a family practice physician. The trial judge has the discretion to decide whether a proposed medical expert is qualified to offer relevant and reliable testimony.[17] Here, the trial judge faced a procedural dilemma. Allowing *voir dire* by telephone that might have rehabilitated Dr. Siegal (by allowing him to explain his apparent disclaimer) would be of limited use to a jury that had seen and heard him question his own opinion's applicability. Teague, for whatever reason, did not perceive the risk to his case that Dr. Siegal's direct testimony before the jury had raised. Therefore, Teague did not attempt to rehabilitate Dr. Siegal on redirect while he was still present in court. Even if the trial judge believed *voir dire* might rehabilitate Dr. Siegal, neither side proffered that Dr. Siegal would or could return at a reasonable time to testify in person before the jury. On this record, the trial judge could infer that

13. *Bowen v. E.I. DuPont de Nemours & Co.,* 906 A.2d 787, 794 (Del.2006).

14. 18 *Del.C.* § 6854 (the trial judge determines if the person is competent to testify as an expert); D.R.E. 702 (determining when an expert may testify).

15. *Re v. State,* 540 A.2d 423, 426 (Del.1988) (emphasis added).

16. *See* note 16 and accompanying text for the trial judge's authority to make this determination.

17. *Bowen,* 906 A.2d at 794.

Dr. Siegal could not make a second personal appearance before the jury. Among the many burdens facing a presiding trial judge is administering a trial in a manner that is fair to all parties. The trial judge did not act arbitrarily or capriciously by declining to hear additional evidence by telephone concerning Dr. Siegal's competency to opine on the applicable standard of care.[18]

### CONCLUSION

Accordingly, we **AFFIRM** the Superior Court's judgment.

---

**18.** Teague has not appealed and we, therefore, do not review the trial judge's ruling as a matter of law that Dr. Siegal's testimony did not comply with 18 *Del. C.* § 6854.