IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FRED SULLIVAN,[1] | § | |
| | § | No. 399, 2023 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK23-02126 |
| YVETTE ANDERS YANEZ, | § | Petition No. 23-17381 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: April 4, 2024
Decided: June 20, 2024

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## **ORDER**

After consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1)     The appellant, Fred Sullivan ("Father"), filed this appeal from the Family Court's protection-from-abuse (PFA) order dated September 25, 2023.  We find no error or abuse of discretion in the Family Court's decision and therefore affirm.

(2)     Father and the appellee, Yvette Yanez ("Mother"), are the parents of a boy, born in 2010 (the "Child").  In August 2023, Mother filed a petition for a PFA

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

order together with a motion and affidavit for an emergency *ex parte* PFA order against Father on behalf of herself and the Child. The filings alleged that Father had, among other things: (i) beaten the Child with a belt on multiple occasions and then withheld the Child's phone from him so that he was unable to take pictures of the resultant bruising; (ii) on one occasion, pushed the Child up against a wall while yelling at and choking him; and (iii) sent multiple derogatory and threatening texts to Mother. On August 17, 2023, the Family Court entered a temporary PFA order and scheduled a hearing on the merits for September 5. On September 1, the Family Court extended the temporary PFA order and rescheduled the hearing for September 25. On September 14, Father filed a motion and affidavit for an emergency *ex parte* order for custody of the Child. As is typical, Father's motion was assigned a different petition number. The Family Court consolidated the custody petition with the PFA petition and sent a notice to the parties informing them that the Family Court would consider both petitions at the September 25 hearing.

(3) At the September 25 hearing, the Family Court heard testimony from Mother and Father and interviewed the Child. Following the hearing, the Family

Court granted the PFA petition and awarded temporary custody of the Child to Mother.[2] Father appeals.

(4) Our review of a decision of the Family Court extends to a review of the facts and law, as well as inferences and deductions made by the trial judge.[3] Our duty is to review the sufficiency of the evidence and to test the propriety of the findings.[4] Findings of fact will not be disturbed on appeal unless they are clearly erroneous.[5] We will not substitute our opinion for the inferences and deductions of the trial judge if they are supported by the record.[6] If the Family Court correctly applied the law to the facts, we review its decision for abuse of discretion.[7] To obtain a PFA order, a petitioner must establish by a preponderance of the evidence that the respondent has committed an act of domestic violence.[8]

(5) Father's arguments on appeal may be fairly summarized as follows: (i) the evidence presented did not support the PFA order; (ii) insufficiency of service;

---

[2] The Family Court also denied Father's petition for emergency custody. Father filed a motion to reargue, identifying the custody petition number and Father as the petitioner in the caption but attempting to reargue the merits of Mother's PFA petition. The Family Court denied the motion, finding it lacked merit with regard to either petition.

[3] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Clark v. Clark*, 47 A.3d 513, 517 (Del. 2012).

[8] *Stuart v. Stuart*, 2017 WL 1090543, at *1 (Del. Mar. 22, 2017).

and (iii) the Family Court was biased in favor of Mother. We find Father's arguments to be unavailing.

(6) Although Father raises various "due process" complaints in connection with his first claim of error, his argument is essentially that the evidence presented at trial did not support the Family Court's finding that a PFA order was warranted. But a review of the PFA hearing transcript reflects that Mother did, in fact, present sufficient evidence to support the Family Court's finding that Father had engaged in domestic violence. The definition of "abuse" includes "[i]ntentionally or recklessly placing or attempting to place another person in reasonable apprehension of physical injury" and "[e]ngaging in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress."[9] In finding that a PFA order was warranted with regard to the Child, the Family Court credited the Child's accounts of Father beating him with a belt and choking him—that is, the Family Court found that Father recklessly placed the Child in reasonable fear of physical injury. And Mother presented evidence that Father had sent her threatening text messages, including one in which he threatened to kill her. Although Father attempted to place the blame on the Child for those texts, the Family Court explicitly rejected his proffered theory as "unpersuasive" and implicitly found that Father had engaged in a course of distressing conduct that was likely to cause Mother fear or emotional

---

[9] 10 *Del. C.* § 1041(1).

distress. "When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact."[10]  As Father acknowledges, "[t]he Judge's finding appear[s] to have been based on the credibility of [the Child's] and [Mother's] testimony."[11]  He is correct.  We will not disturb the Family Court's credibility determinations on appeal.

(7)     We review Father's insufficiency-of-service argument for plain error because he did not raise it in the Family Court in the first instance.[12]  There is no plain error here.  Defects in service of process must be raised in the first instance or they are waived.[13]  In any event, it is clear that Father had adequate, actual notice of the proceedings: (i) Father concedes that he learned of the hearing on (if not before) September 14—eleven days before the hearing; (ii) Father does not dispute that he received the Family Court's notice of the hearing scheduled for his petition for custody, and that document noted that his custody petition was consolidated with

---

[10] *Shimel v. Shimel*, 2019 WL 2142066, at *2 (Del. May 14, 2019) (citations omitted).

[11] Opening Br. at 18.

[12] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Whittaker v. Houston*, 888 A.2d 219, 224 (Del. 2005) (observing that plain error is that which is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process").

[13] *Brewington-Carr v. Coleman*, 1999 WL 734775, at *2 (Del. Aug. 30, 1999) (holding that a party's failure to register a timely objection to insufficient service of process procedurally bars it from raising the argument later). *See also* Del. Fam. Ct. Civ. R. P. 12(h)(1) (a defense of insufficiency of process is waived if not made by motion under Rule 12 or included in a responsive pleading).

Mother's pending PFA petition and cited the September 25 hearing date; (iii) Father emailed Mother's counsel about discovery in advance of the September 25 hearing; and (iv) Father prepared for the September 25 hearing, as evidenced by the fact that he appeared at the hearing with documents and witnesses.

(8) We also review Father's claim that the Family Court judge was biased in favor of Mother for plain error because Father did not move for the judge's recusal below. Again, there is no plain error here. Father's claim of bias is based on the fact that the attorney ("Counsel") who filed the petition for a PFA order and related documents on Mother's behalf is a former law clerk for the judge who presided over the September 25 hearing. Even assuming, without accepting, Father's position that a judge cannot fairly preside over a proceeding involving one of his former law clerks,[14] a *different* attorney from Counsel's office represented Mother at the September 25 hearing. Moreover, Father's claim of bias seems to be predicated entirely on the fact that the Family Court granted Mother's petition for a PFA order. But "a trial judge's rulings alone almost never constitute a valid *per se* basis for disqualification on the ground of bias."[15]

---

[14] Indeed, the Court finds such a bright-line assumption untenable, given the frequency with which a law clerk goes on to practice before the court for which he clerked as well as the professional nature of the law clerk/judge relationship.

[15] *In re Whittrock*, 649 A.2d 1053, 1054 (Del. 1994).

(9) As a final matter, after Father filed his reply brief in this appeal, he continued to submit various documents to the Court. These documents were improperly filed because they either: (i) contain additional argument that is impermissible under Supreme Court Rule 15(a)(vi),[16] or (ii) cite information that Father discovered after—or factual developments that followed—the Family Court's September 25 order and are therefore not part of the record on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[16] Del. Supr. Ct. R. 15(a)(vi) (providing that "no other brief or writing containing argument may be submitted without leave of the Court" after briefing is complete).